**LEON J. SOKOL, ESQ. (LJS4104)**
**CULLEN AND DYKMAN, LLP**
**433 Hackensack Avenue**
**Hackensack, NJ 07601**
**(201) 488-1300**
Attorneys for Interveners-Applicants
Senate President Stephen M. Sweeney and
Assembly Speaker Craig J. Coughlin

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WATERFRONT COMMISSION OF NEW YORK HARBOR,** | CIVIL ACTION NO.: 2:18-cv-00650-SDW |
| **Plaintiff,** | Hon. Susan D. Wigenton, U.S.D.J.<br>Hon. Leda Dunn Wetre, U.S.M.J. |
| **v.** | Return Date: February 20, 2018, unless the Court elects to hear this motion on short notice. |
| **PHILIP MURPHY, in his official capacity as Governor of New Jersey,** | **AFFIRMATION OF LEON J. SOKOL, ESQ. IN SUPPORT OF MOTION TO INTERVENE PURSUANT TO FED. R. CIV. PRO. 24(b)  BY INTERVENOR-APPLICANTS SENATE PRESIDENT STEPHEN M. SWEENEY AND ASSEMBLY SPEAKER CRAIG J. COUGHLIN** |
| **Defendants.** | |

LEON J SOKOL, ESQ., of full age, affirms to the court as follows:

1.      I am an attorney at law of the State of New Jersey and a partner with the law firm of Cullen and Dykman LLP, attorneys for Interveners-Applicants Senate President Stephen M. Sweeney and Assembly Speaker Craig J. Coughlin, in the above-captioned matter.

2.      Attached hereto as Exhibit "A" is a true and correct copy of the proposed Answer of Intervener-Applicants Senate President Stephen M. Sweeney and Assembly Speaker Craig J. Coughlin.

3.      Attached hereto as Exhibit "B" is a true and correct copy of Summary of Legislative History of S3502/A2179 (enacted as *L*. 2017, *c*. 324).

4.      Attached hereto as Exhibit "C" is a true and correct copy of S3502 (enacted as *L*. 2017, *c* 324).

5.      Attached hereto as Exhibit "D" is a true and correct copy of Statement of Assembly Appropriations Committee to S. 3502.

6.      Attached hereto as Exhibit "E" is a true and correct copy of Senate Budget and Appropriations Committee to S.3502.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


                                        /s/   Leon J. Sokol
                                        Leon J. Sokol


Date:  January 26, 2018

# EXHIBIT A

**LEON J. SOKOL, ESQ. (LJS4104)**
**CULLEN AND DYKMAN, LLP**
**433 Hackensack Avenue**
**Hackensack, NJ 07601**
**(201) 488-1300**
Attorneys for Defendants-Interveners
Senate President Stephen M. Sweeney and
Assembly Speaker Craig J. Coughlin

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WATERFRONT COMMISSION OF NEW YORK HARBOR,** | CIVIL ACTION NO.: 2:18-cv-00650-SDW |
| **Plaintiff,** | Hon. Susan D. Wigenton, U.S.D.J. |
| | Hon. Leda Dunn Wetre, U.S.M.J. |
| **v.** | |
| **PHILIP MURPHY, in his official capacity as Governor of New Jersey, SENATE PRESIDENT STEPHEN SWEENEY AND ASSEMBLY SPEAKER CRAIG J. COUGHLIN,** | **PROPOSED ANSWER OF DEFENDANTS-INTERVENERS SENATE PRESIDENT STEPHEN M, SWEENEY AND ASSEMBY SPEAKER CRAIG J. COUGHLIN** |
| **Defendants.** | |

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendants-Interveners, Senate President Stephen M. Sweeney and Assembly Speak Craig J. Coughlin, (collectively "Presiding Officers"), answer the Complaint of the plaintiff, Waterfront Commission of New York Harbor (collectively "Plaintiff") as follows:

### PRELIMINARY STATEMENT

1.       Paragraph 1 of the Complaint does not contain factual allegations and instead contains legal argument and therefore a response is not necessary to same, except to deny that the State of New Jersey or any defendant undertook any action that was illegal.

2.      The allegations of the first sentence of paragraph 2 of the Complaint are admitted. The allegations of the second sentence of paragraph 2 of the Complaint are not factual allegations and are instead a legal argument and therefore a response is not necessary to same.

3.      As to the allegations in the first sentence of paragraph 3 Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs. The allegations of the second sentence of paragraph 3 of the Complaint are not factual allegations and are instead legal argument and therefore a response is not necessary to same.

4.      The allegations of Paragraph 4 of the Complaint are not factual allegations and are instead legal argument and therefore a response is not necessary to same.

5.      As to the allegations of Paragraph 5 Governor Christie's statement speaks for itself and therefore a response is not necessary to same, accept to point out that Governor Christie did sign into law New Jersey Senate Bill No. 3502 (the "New Jersey Law") on January 15, 2018.

6.      As to the allegations of the first sentence of Paragraph 6 of the Complaint Governor Christie's statement speaks for itself and therefore a response is not necessary to same and Plaintiff's interpretation as to what Governor Christie meant by his statement is also not a factual allegation. The allegations of the second sentence of Paragraph 6 of the Complaint are not factual allegations and therefore a response is not necessary to same.

2

## PARTIES

7.    The allegations of Paragraph 7 of the Complaint are not  factual allegations and are instead legal argument and therefore a response is not necessary to same, except it is denied that Plaintiff has the legal authority, capacity and standing to bring the within lawsuit and to assert the claims set forth in the Complaint.

8.    The allegations of Paragraph 8 of the Complaint are not factual allegations and are instead legal argument and therefore a response is not necessary to same, except to admit that Philip Murphy is the governor of the State of New Jersey.

## JURISDICTION AND VENUE

9.    As to the allegations of Paragraph 9 of the Complaint are admitted, except it is denied that Plaintiff has legal authority, capacity and standing to bring the within lawsuit and to assert the claims set forth in the Complaint.

10.    The allegations of Paragraph 10 of the Complaint are admitted.

11.    The allegations of Paragraph 11 of the Complaint are admitted.

12.    The allegations of Paragraph 12 of the Complaint are admitted.

## FACTUAL ALLEGATIONS

13.    As to the allegations of paragraph 13 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs.

14.    As to the allegations of paragraph 14 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs, except to admit that both the cited statutes were passed in 1953.

3

15.     The allegations of the first sentence of Paragraph 15 of the Complaint are admitted. The allegations of the remainder of Paragraph 15 of the Complaint are not factual allegations and are instead legal argument and therefore a response is not necessary to same.

16.     As to the allegations of Paragraph 16 of the Complaint the cited statutes speak for themselves and therefore a response is not necessary to same.

17.     As to the allegations of Paragraph 17 of the Complaint the terms of the Waterfront Compact ("Compact") speak for themselves and the interpretation of same set forth in Paragraph 17 is a legal conclusion and therefore a response is not necessary to same.

18.     As to the allegations of the first sentence of Paragraph 18 of the Complaint the terms of the Waterfront Compact speak for themselves and the interpretation of same set forth in Paragraph 18 of the Complaint is a legal conclusion and therefore a response is not necessary to same. As to the allegations in the second sentence of Paragraph 18 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs, except to admit that at over ninety (90%) percent of all transactions conducted in the ports are conducted in the State of New Jersey.

19.     As to the allegations of Paragraph 19 of the Complaint the terms of the Waterfront Compact speak for themselves and the interpretation of same set forth in Paragraph 19 is a legal conclusion and therefore a response is not necessary to same.

20.     As to the allegations of Paragraph 20 of the Complaint the terms of the Waterfront Compact speak for themselves and the interpretation of same set forth in Paragraph 20 is a legal conclusion and therefore a response is not necessary to same.

21.     As to the allegations of Paragraph 21 the terms of the Waterfront Compact speak for themselves and the interpretation of same set forth in Paragraph 21 is a legal conclusion and therefore a response is not necessary to same.

22.     As to the allegations of Paragraph 22 of the Complaint the terms of the Waterfront Compact speak for themselves and the interpretation of same set forth in Paragraph 22 is a legal conclusion and therefore a response is not necessary to same.

23.     As to the allegations of Paragraph 23 of the Complaint the terms of the Waterfront Compact speak for themselves and the interpretation of same set forth in Paragraph 23 is a legal conclusion and therefore a response is not necessary to same.

24.     As to the allegations in the first sentence of Paragraph 24 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs, as some or all of the businesses that pay the fees that fund the Commission may be taxpayers of New York and/or New Jersey. As to the allegations of the second sentence of Paragraph 24 the terms of the Waterfront Compact speak for themselves and the interpretation of same set forth in Paragraph 24 is a legal conclusion and therefore a response is not necessary to same.

25.     As to the allegations of Paragraph 25 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs.

26.     As to the allegations of Paragraph 26 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs.

27.     As to the allegations of Paragraph 27 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs, except to state that the cited Special Report speaks for itself.

28.     As to the allegations of Paragraph 28 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs, except to state that the cited Special Report speaks for itself.

29.     As to the allegations of Paragraph 29 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs.

30.     As to the allegations of Paragraph 30 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs.

31.     As to the allegations of Paragraph 31 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs.

32.     As to the allegations of the first sentence of Paragraph 31 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs. The allegations of the second sentence of Paragraph 31 of the Complaint are not factual allegations and are instead legal argument and therefore a response is not necessary to same, except to deny that the New Jersey Law prevents either the state or federal government from taking action to combat discriminatory hiring.

33.     As to the allegations of paragraph 33 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs.

34.     As to the allegations of Paragraph 34 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs.

35.     As to the allegations of Paragraph 35 of the Complaint the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs.

36.     As to the allegations of Paragraph 36 of the Complaint the terms of the Waterfront Compact speak for themselves and the interpretation of same set forth in Paragraph 36 is a legal conclusion and therefore a response is not necessary to same.

37.     As to the allegations of Paragraph 37 of the Complaint the terms of the Waterfront Compact speak for themselves and the interpretation of same set forth in Paragraph 37 is a legal conclusion and therefore a response is not necessary to same.

38.     As to the allegations of Paragraph 38 of the Complaint the terms of the cited statute speak for themselves and the interpretation of same set forth in Paragraph 38 is a legal conclusion and therefore a response is not necessary to same.

39.     As to the allegations of Paragraph 39 of the Complaint that quote statements by Governor Christie those statements speak for themselves and therefore a response is not necessary to same. The allegations contained in the last sentence of Paragraph 39 are legal conclusions and therefore a response is not necessary to same, except to state that the Presiding

Officers are without knowledge or information as to whether New York has to date passed the legislation referenced therein and they leave the Plaintiff to its proofs.

40.    The allegations of Paragraph 40 of the Complaint refer to the specific terms of the cited legislation, the terms of the legislation speak for themselves and therefore a response is not necessary to same.

41.    The allegations of Paragraph 41 of the Complaint refer to quoted language from a statement of the New Jersey Office of Legislative Services, and the terms of the statement speak for themselves and therefore a response is not necessary to same.

42.    The allegations of Paragraph 42 of the Complaint refer to quoted language from a statement of Governor Christie, and the terms of the statement speak for themselves and therefore a response is not necessary to same.

43.    The allegations of the first and second sentences of Paragraph 43 of the Complaint are admitted. The remaining allegations of Paragraph 43 consists of Plaintiff's interpretation of the New Jersey Law, and the terms of the cited statute speak for themselves and the interpretation of same set forth in Paragraph 43 are legal conclusions and therefore a response is not necessary to same.

44.    As to the allegations of Paragraph 44 of the Complaint the terms of the Compact and the Supremacy Clause of the United States Constitution speak for themselves and the interpretation of same set forth in Paragraph 44 is a legal conclusion and therefore a response is not necessary to same, except to deny that New Jersey's actions were illegal or unconstitutional.

45.    The allegations of Paragraph 45 of the Complaint are denied.

46.    The allegations of Paragraph 46 of the Complaint consists of Plaintiff's interpretation of the New Jersey Law and are legal conclusions and therefore a response is not necessary to same, except to deny that the State of New Jersey or any Defendant undertook any illegal step or action.

47.    The allegations of Paragraph 47 of the Complaint consists of Plaintiff's interpretation of the New Jersey Law, New York Law and the Waterfront Compact and are legal conclusions and therefore a response is not necessary to same, except to deny that the State of New Jersey or any Defendant undertook any illegal step or action.

48.    The allegations of Paragraph 48 of the Complaint consists of Plaintiff's interpretation of the New Jersey Law and are legal conclusions and therefore a response is not necessary to same, except to admit that the "vast majority of commercial Port operations occurs on the New Jersey side".

49.    The allegations of Paragraph 49 of the Complaint consists of Plaintiff's interpretation of the New Jersey Law and are legal conclusions and therefore a response is not necessary to same, except as to the allegations set forth in the first and second sentences of Paragraph 49 the Presiding Officers are without knowledge or information sufficient to respond to this allegation and they leave the Plaintiff to its proofs.

50.    The allegations set forth in the first sentence of Paragraph 50 of the Complaint consists of Plaintiff's interpretation of the New Jersey Law and are legal conclusions and therefore a response is not necessary to same. The allegations set forth in the second sentence of Paragraph 50 are denied.

9

51.     The allegations set forth in the first sentence of Paragraph 51 of the Complaint consists of Plaintiff's interpretation of the New Jersey Law and are legal conclusions and therefore a response is not necessary to same. The allegations set forth in the second and fourth sentences of Paragraph 51 are denied. As to the allegations set forth in the third sentence of Paragraph 51 the Presiding Officers are without knowledge or information sufficient to respond to this allegation as to the and they leave the Plaintiff to its proofs, except to acknowledge that the state and federal governments have numerous laws and agencies outside of the Commission that have the jurisdiction, authority and ability to address and combat the referenced criminal activity.

52.     The allegations of Paragraph 52 of the Complaint are denied.

53.     The allegations set forth in the first sentence of Paragraph 53 of the Complaint consists of Plaintiff's interpretation of the New Jersey Law and are legal conclusions and therefore a response is not necessary to same. The allegations set forth in the second sentences are denied.

54.     The allegations set forth in the first sentence of Paragraph 54 of the Complaint consists of Plaintiff's interpretation of the New Jersey Law and are legal conclusions and therefore a response is not necessary to same, except to deny the harm alleged and that Plaintiffs have any standing to assert claims based on the alleged harm that may be suffered by individual citizens of the State of New York. As to the remaining allegations of Paragraph 54 the Presiding Officers are without knowledge or information sufficient to respond to this allegation as to the and they leave the Plaintiff to its proofs.

55.     The allegations set forth in the first sentence of Paragraph 55 of the Complaint consists of Plaintiff's interpretation of the New Jersey Law and are legal conclusions and therefore a response is not necessary to same, except to deny the harm alleged and that Plaintiffs have any standing to assert claims based on the alleged harm that may be suffered by New York longshore industry and cruise ship terminals. As to the remaining allegations of Paragraph 55 the Presiding Officers are without knowledge or information sufficient to respond to this allegation as to the and they leave the Plaintiff to its proofs.

## COUNT I
## (DECLARATORY JUDGMENT0

56.     The Presiding Officers repeat and re-allege each and every prior allegation of this Answer as if set forth at length herein, verbatim and incorporates the same by reference.

57.     The allegations of Paragraph 57 of the Complaint consist of Plaintiff's interpretation of the New Jersey Law and the Compact and are legal conclusions and therefore a response is not necessary to same.

58.     The allegations of Paragraph 58 are denied.

59.     The allegations of Paragraph 59 are denied.

60.     The allegations of Paragraph 60 are denied.

## AFFIRMATIVE DEFENSES

1.     The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b) (6) as it fails to state a claim upon which relief can be granted.

2.     The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b) (1) for lack of subject matter jurisdiction.

3.      The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b) (7) for failure to join necessary parties under Rule 19, including the failure to join the State of New York.

4.      The Complaint should be dismissed as the instituting of the suit was not approved by a unanimous vote of both the members of the Commission as required by N.J.S.A. § 32:23-9 and N.Y. Unconsol Laws §9809 and it was therefore an illegal and ultra vires act.

5.      The Complaint should be dismissed as the individual, the Executive Director, who commenced the suit purportedly on behalf the Plaintiff lacked the legal authority and capacity to authorize and commence the suit, and it was therefore an illegal and ultra vires act.

6.      The Complaint should be dismissed as the individual, the Executive Director, who commenced the suit purportedly on behalf the Plaintiff lacks standing to bring the suit.

7.      The Complaint should be dismissed as the Plaintiff lacks standing to bring the suit for alleged harm that the relief in the Complaint seeks to address that will allegedly be incurred by persons or entities other than Plaintiff.

8.      The Complaint should be dismissed as premature as the State of New York has advised it is still considering the New Jersey Law and has not yet instituted concurring legislation nor advised of its opposition to the New Jersey Law.

9.      The Complaint should be dismissed as it is violation of the 11th Amendment of the United States Constitution.

10.     The factual conclusions as to the impact of the implementation of the New Jersey Law set forth in the Complaint are based on self-serving speculation and are not a basis for granting the relief sought in the Complaint.

11.     The claims of Plaintiff are barred by the Doctrines of Waiver and Equitable Estoppel.

12.     Plaintiff has not been denied any right, privilege or immunity secured by the State or Federal Constitution or laws.

13.     Defendants actions at all times were lawful and were performed pursuant to the applicable laws, statutes and regulations and therefore are valid as a matter of law.

14.     The Complaint should be dismissed as the Waterfront Commission interstate compact does not contain any language barring a state from unilateral withdrawal from the compact.

15.     The Complaint should be dismissed by operation of the principle enunciated by the United States Supreme Court that silence in an interstate compact brought about by the absence of an express provision means that ordinarily the background common law applies.

16.     The Complaint should be dismissed by operation of the common law principle that if a contract contains no express terms as to its duration, it is terminable at will or after a reasonable time.

17.     The Complaint should be dismissed because the drafters of the Waterfront Commission interstate compact intended the compact to be only a temporary arrangement.

18.     Defendants-Intervenors reserve the right to interpose such other defenses as may be warranted after further investigation and discovery.

WHEREFORE, Defendants-Interveners, Senate President, Stephen M. Sweeney and Assembly Speaker Craig J. Coughlin demand judgment against plaintiff, Waterfront Commission of New York Harbor dismissing the Complaint with prejudice and for attorney's fees and costs of suit.

13

Respectfully submitted,


/s/   Leon J. Sokol
Leon J. Sokol
CULLEN AND DYKMAN, LLP
433 Hackensack Avenue
Hackensack, NJ 07601
(201) 488-1300
Attorneys for Interveners-Applicants
Senate President Stephen M. Sweeney and
Assembly Speaker Craig J. Coughlin

DATED:  January 26, 2018

**EXHIBIT B**

**New Jersey State Legislature**

home   site map   what's new   faq   links   help   contact us

**GENERAL INFO**
Our Legislature
Legislative Process
Legislative Initiatives
Historical Info
Public Info Assistance
Kids' Page
Capitol Complex
  Parking

**MEMBERS**
Find your Legislator
Legislative Leadership
Legislative Roster
Seating Charts

**DISTRICTS**
Districts by Number
District Map
Municipalities Index

**BILLS**
Bills 2018-2019
Prior Sessions

**COMMITTEES**
Senate Committees
  - Committee Aides
Assembly Committees
  -Committee Aides
Joint Committees
Committee Groups
Legislative
  Commissions
Senate Nominations

**LAWS and CONSTITUTION**
Statutes
Chapter Laws
Constitution

**RULES**
Senate
General Assembly

**ETHICS**
Conflicts of Interest
  Law
Code Of Ethics
Financial Disclosure
  Termination or
  Assumption of
  Public Employment
  Form
Formal Advisory
  Opinions
Contract Awards
Joint Rule 19
Ethics Tutorial

**CONTINUING LEGAL EDUCATION for LEGISLATIVE ATTORNEYS**
CLE Registration
  Form
Certification for
  CLE Ethics Credit
CLE Presentation
  Schedule

**LEGISLATIVE PUBLICATIONS**
Legislative Calendar
Legislative Digest
Legislative LDOA
Budget and Finance
Audit Reports

## Bills 2016-2017

**S3502 Directs Governor to withdraw from compact establishing Waterfront Commission of New York Harbor; dissolves compact and commission; transfers commission's NJ operations to State Police.**
**Bills and Joint Resolutions Signed by the Governor**

Identical Bill Number: <u>S2042</u>
A2179
Last Session Bill Number: <u>S2277</u>
<u>(2R)</u>  A3506(1R)

Sweeney, Stephen M.  as Primary Sponsor
Sarlo, Paul A.  as Primary Sponsor
Quijano, Annette  as Primary Sponsor
Giblin, Thomas P.  as Primary Sponsor
Wimberly, Benjie E.  as Primary Sponsor
Pintor Marin, Eliana  as Primary Sponsor
Spencer, L. Grace  as Primary Sponsor
Bramnick, Jon M.  as Primary Sponsor
Rible, David P.  as Primary Sponsor
Lesniak, Raymond J.  as Co-Sponsor
Sumter, Shavonda E.  as Co-Sponsor
Johnson, Gordon M.  as Co-Sponsor
Diegnan, Patrick J., Jr.  as Co-Sponsor
Caputo, Ralph R.  as Co-Sponsor
Singleton, Troy  as Co-Sponsor
Coughlin, Craig J.  as Co-Sponsor
Bucco, Anthony M.  as Co-Sponsor
Rumana, Scott T.  as Co-Sponsor
Kean, Sean T.  as Co-Sponsor
Rooney, Kevin J.  as Co-Sponsor
Pinkin, Nancy J.  as Co-Sponsor
DeCroce, BettyLou  as Co-Sponsor
Wisniewski, John S.  as Co-Sponsor

11/9/2017 Introduced in the Senate, Referred to Senate Budget and Appropriations Committee
11/30/2017 Reported from Senate Committee, 2nd Reading
12/7/2017 Passed by the Senate (38-0)
12/7/2017 Received in the Assembly, Referred to Assembly Appropriations Committee
12/18/2017 Reported out of Assembly Committee, 2nd Reading
1/8/2018 Substituted for A2179
1/8/2018 Passed Assembly (Passed Both Houses) (66-1-1)
1/16/2018 Approved P.L.2017, c.324.

Statement - SBA 11/30/17 - 2 pages <u>PDF Format</u>   <u>HTML Format</u>
Fiscal Estimate - 12/12/17; as introduced - 4 pages <u>PDF Format</u>   <u>HTML Format</u>
Statement - AAP 12/18/17 - 3 pages <u>PDF Format</u>   <u>HTML Format</u>
Introduced - - 47 pages <u>PDF Format</u>   <u>HTML Format</u>

**Committee Voting:**
SBA  11/20/2017 - r/favorably - Yes {13}  No {0}  Not Voting {0}  Abstains {0}  -  <u>Roll Call</u>
AAP  12/18/2017 - r/favorably - Yes {11}  No {0}  Not Voting {0}  Abstains {0}  -  <u>Roll Call</u>

**Session Voting:**
Sen   12/7/2017 - 3RDG FINAL PASSAGE - Yes {38} No {0} Not Voting {2}  - Roll

**Legislative Reports**
**Public Hearing**
  **Transcripts**
**Glossary**
**Summary of**
  **Enactments**

**Disclaimer/**
  **Privacy Policy**


**OPRA | Open**
**Public Records**
**Act**

**Submit an OPRA request**

**home | back** to NJ State Legislature Bill Search

Document Formats Used on this Site • email for Legislative info • email Webmaster
©2002 New Jersey Office of Legislative Services

**New Jersey State Legislature**

home    site map    what's new    faq    links    help    contact us

**GENERAL INFO**
Our Legislature
Legislative Process
Legislative Initiatives
Historical Info
Public Info Assistance
Kids' Page
Capitol Complex
   Parking

**MEMBERS**
Find your Legislator
Legislative Leadership
Legislative Roster
Seating Charts

**DISTRICTS**
Districts by Number
District Map
Municipalities Index

**BILLS**
Bills 2018-2019
Prior Sessions

**COMMITTEES**
Senate Committees
   - Committee Aides
Assembly Committees
   -Committee Aides
Joint Committees
Committee Groups
Legislative
   Commissions
Senate Nominations

**LAWS and
CONSTITUTION**
Statutes
Chapter Laws
Constitution

**RULES**
Senate
General Assembly

**ETHICS**
Conflicts of Interest
   Law
Code Of Ethics
Financial Disclosure
   Termination or
   Assumption of
   Public Employment
   Form
Formal Advisory
   Opinions
Contract Awards
Joint Rule 19
Ethics Tutorial

**CONTINUING LEGAL
EDUCATION
for LEGISLATIVE
ATTORNEYS**
CLE Registration
   Form
Certification for
   CLE Ethics Credit
CLE Presentation
   Schedule

**LEGISLATIVE
PUBLICATIONS**
Legislative Calendar
Legislative Digest
Legislative LDOA
Budget and Finance
Audit Reports

## Bills 2016-2017

**A2179** Directs Governor to withdraw from compact establishing Waterfront Commission of New York Harbor; dissolves compact and commission; transfers commission's NJ operations to State Police.
**Substituted by another Bill**

Identical Bill Number: <u>S2042</u>
S3502
Last Session Bill Number: <u>A3506</u>
(1R)

Quijano, Annette   as Primary Sponsor
Giblin, Thomas P.   as Primary Sponsor
Wimberly, Benjie E.   as Primary
Sponsor
Pintor Marin, Eliana   as Primary
Sponsor
Spencer, L. Grace   as Primary Sponsor
Bramnick, Jon M.   as Primary Sponsor
Rible, David P.   as Primary Sponsor
Sumter, Shavonda E.   as Co-Sponsor
Johnson, Gordon M.   as Co-Sponsor
Diegnan, Patrick J., Jr.   as Co-Sponsor
Caputo, Ralph R.   as Co-Sponsor
Singleton, Troy   as Co-Sponsor
Coughlin, Craig J.   as Co-Sponsor
Bucco, Anthony M.   as Co-Sponsor
Rumana, Scott T.   as Co-Sponsor
Kean, Sean T.   as Co-Sponsor
Rooney, Kevin J.   as Co-Sponsor
Pinkin, Nancy J.   as Co-Sponsor
DeCroce, BettyLou   as Co-Sponsor
Wisniewski, John S.   as Co-Sponsor

1/27/2016 Introduced, Referred to Assembly Law and Public Safety Committee
11/30/2017 Reported and Referred to Assembly Appropriations Committee
12/18/2017 Reported out of Assembly Committee, 2nd Reading
1/8/2018 Substituted by S3502

Introduced - - 47 pages PDF Format   HTML Format
Statement - ALP 11/30/17 - 2 pages PDF Format   HTML Format
Statement - AAP 12/18/17 - 3 pages PDF Format   HTML Format
Fiscal Estimate - 12/20/17; as introduced - 4 pages PDF Format   HTML Format
Technical Review Of Prefiled Bill - - 46 pages PDF Format   HTML Format

**Committee Voting:**
ALP 11/30/2017 - r/favorably  - Yes {9}  No {0}  Not Voting {0}  Abstains {0}  -  <u>Roll Call</u>
AAP 12/18/2017 - r/favorably  - Yes {11}  No {0}  Not Voting {0}  Abstains {0}  -  <u>Roll Call</u>

**home | back** to NJ State Legislature Bill Search

New Jersey Legislature—Bills                                                                 Page 2 of 2

**Legislative Reports**
**Public Hearing**
  **Transcripts**
**Glossary**
**Summary of**
  **Enactments**

**Disclaimer/**
 **Privacy Policy**



OPRA | Open
Public Records
Act

**Submit an OPRA request**

Document Formats Used on this Site • email for Legislative info • email Webmaster
©2002 New Jersey Office of Legislative Services

**EXHIBIT C**

# SENATE, No. 3502

# STATE OF NEW JERSEY

## 217th LEGISLATURE

INTRODUCED NOVEMBER 9, 2017

**Sponsored by:**
**Senator STEPHEN M. SWEENEY**
**District 3 (Cumberland, Gloucester and Salem)**
**Senator PAUL A. SARLO**
**District 36 (Bergen and Passaic)**
**Assemblywoman ANNETTE QUIJANO**
**District 20 (Union)**
**Assemblyman THOMAS P. GIBLIN**
**District 34 (Essex and Passaic)**
**Assemblyman BENJIE E. WIMBERLY**
**District 35 (Bergen and Passaic)**
**Assemblywoman ELIANA PINTOR MARIN**
**District 29 (Essex)**
**Assemblywoman L. GRACE SPENCER**
**District 29 (Essex)**
**Assemblyman JON M. BRAMNICK**
**District 21 (Morris, Somerset and Union)**
**Assemblyman DAVID P. RIBLE**
**District 30 (Monmouth and Ocean)**

**Co-Sponsored by:**
**Senator Lesniak, Assemblywoman Sumter, Assemblymen Johnson, Diegnan, Caputo, Singleton, Coughlin, A.M.Bucco, Rumana, S.Kean, Rooney, Assemblywomen Pinkin, B.DeCroce and Assemblyman Wisniewski**

**SYNOPSIS**
    Directs Governor to withdraw from compact establishing Waterfront Commission of New York Harbor; dissolves compact and commission; transfers commission's NJ operations to State Police.

**CURRENT VERSION OF TEXT**
    As introduced.

**(Sponsorship Updated As Of: 1/9/2018)**

**S3502** SWEENEY, SARLO

2

1    **An Act** directing the Governor, on behalf of the State of New
2    Jersey, to notify the Congress of the United States, the Governor
3    of the State of New York, and the Waterfront Commission of
4    New York Harbor, of the State of New Jersey's intention to
5    withdraw from the compact created by P.L.1953, c.202 (C.32:23-
6    1 et seq.), supplementing Titles 32 and 53 of the Revised
7    Statutes, amending R.S.52:14-7, and repealing parts of the
8    statutory law.
9
10    **Be It Enacted** *by the Senate and General Assembly of the State*
11    *of New Jersey:*
12
13    1.  (New section) The Legislature finds and declares that:
14    a.  The Port of New York and New Jersey (port) has been one
15    of the backbones of the region's economy for decades. When
16    ranked by tonnage, the port is the largest port complex on the East
17    coast of North America and the third largest in the United States.
18    When ranked by the value of shipments passing through it, the port
19    is the second busiest freight gateway in the United States. The
20    port's strategic location, within one day's drive of a significant
21    percentage of the national market and developed transportation
22    infrastructure, are key assets that have made the region a gateway
23    for international trade. Since the birth of containerization in 1956,
24    the marine terminals on the New Jersey side of the port have grown
25    significantly in comparison to the New York terminals. Today more
26    than 82 percent of the cargo and 82 percent of the work hours are
27    on the New Jersey side of the port. The port and freight industry in
28    New Jersey alone supports more than 143,000 direct jobs and
29    250,000 total jobs, nearly $14.5 billion in personal income, over
30    $20 billion in business income, and nearly $4.9 billion in federal,
31    State, and local taxes, of which State and local taxes account for
32    $1.6 billion.
33    b.  The Waterfront Commission of New York Harbor
34    (commission) was created through a compact between the states of
35    New Jersey and New York and approved by Congress in 1953. The
36    commission's mission is to ensure fair hiring and employment
37    practices and investigate, deter, and combat criminal activity and
38    influence in the port. The commission has itself been tainted by
39    corruption in recent years and, moreover, has exercised powers that
40    do not exist within the authorizing compact, by dictating the terms
41    of collective bargaining agreements of organized labor, and by
42    requiring stevedoring companies to hire and retain independent
43    inspectors to examine company operations in order for those
44    companies to continue to operate in the port. Further, the
45    commission, despite changes in the industry to drive out organized

**EXPLANATION – Matter enclosed in bold-faced brackets [thus] in the above bill is
not enacted and is intended to be omitted in the law.**

**Matter underlined <u>thus</u> is new matter.**

1   crime's influence, has over-regulated the businesses at the port in an
2   effort to justify its existence as the only waterfront commission in
3   any port in the United States. As a result, the commission has
4   become an impediment to future job growth and prosperity at the
5   port.
6       c.   While there is a continued need to regulate port-located
7   business to ensure fairness and safety, there are numerous federal,
8   State, and local taxpayer funded agencies that have jurisdiction that
9   the commission lacks to regulate port operations, including, but not
10  limited to: the United States Department of Homeland Security;
11  United States Customs and Border Protection; the United States
12  Coast Guard; the Transportation Security Administration; the
13  Federal Bureau of Investigation; the United States Department of
14  Labor's Division of Longshore and Harbor Workers Compensation;
15  the National Labor Relations Board; the Food and Drug
16  Administration; the United States Environmental Protection
17  Agency; the United States Department of Transportation; the
18  Federal Maritime Commission; the Occupational Safety and Health
19  Administration; the Port Authority of New York and New Jersey
20  Police Department; depending on the particular location of the
21  facility in New Jersey, the City of Newark Police Department, City
22  of Elizabeth Police Department, City of Bayonne Police
23  Department, City of Jersey City Police Department, and the New
24  Jersey State Police; and, in matters of fair hiring and employment
25  discrimination, the United States Equal Employment Opportunity
26  Commission and the New Jersey Division on Civil Rights.
27      d.   Abolishing the commission and transferring the New Jersey
28  portion of the commission's law enforcement responsibilities to the
29  New Jersey State Police would be practical and efficient, as the
30  State Police is suited to undertake an investigation of any criminal
31  activity in the ports of northern New Jersey without impeding
32  economic prosperity.
33
34      2.   (New section)   a.   Within 30 days of the effective date of
35  P.L.    , c.   (C.       ) (pending before the Legislature as this bill),
36  the Governor, on behalf of the State of New Jersey, shall notify the
37  Congress of the United States, the Governor of the State of New
38  York, and the waterfront commission of New York harbor, of the
39  State of New Jersey's intention to withdraw from:
40      (1)   the compact entered into by the State of New Jersey pursuant
41  to its agreement thereto under P.L.1953, c.202 (C.32:23-1 et seq.)
42  and by the State of New York pursuant to its agreement thereto
43  under P.L.1953, c.882 (NY Unconsol. Ch.307, s.1), as amended and
44  supplemented; and
45      (2)   the compact, entered into by the State of New Jersey
46  pursuant to its agreement thereto under P.L.1970, c.58 (C.32:23-150
47  et seq.) and by the State of New York pursuant to its agreement

**S3502** SWEENEY, SARLO

4

1 thereto under P.L.1970, c.951 (NY Unconsol. Ch.307, s.10), as
2 amended and supplemented.
3    b.  As soon as practicable after the date of notification pursuant
4 to subsection a. of this section, the Governor shall notify the
5 presiding officers of each house of the Legislature that the
6 notification has occurred, the date of the notification, and any other
7 information concerning the notification the Governor deems
8 appropriate.
9
10    3.  (New section) As used in P.L.  , c.  (C.    ) (pending
11 before the Legislature as this bill):
12    "Career offender" means a person whose behavior is pursued in
13 an occupational manner or context for the purpose of economic
14 gain, utilizing methods that are deemed criminal violations against
15 the laws of this State.
16    "Career offender cartel" means a number of career offenders
17 acting in concert, and may include what is commonly referred to as
18 an organized crime group.
19    "Carrier" means a carrier as that term is defined in 49 U.S.C.
20 s.13102.
21    "Carrier of freight by water" means any person who may be
22 engaged or who may hold himself or herself out as willing to be
23 engaged, whether as a common carrier, a contract carrier, or
24 otherwise, except for carriage of liquid cargoes in bulk in tank
25 vessels designed for use exclusively in that service or carriage by
26 barge of bulk cargoes consisting of only a single commodity loaded
27 or carried without wrappers or containers and delivered by the
28 carrier without transportation mark or count, in the carriage of
29 freight by water between any point in the port of New York district,
30 as applicable only within the State of New Jersey, and a point
31 outside that district.
32    "Checker" means a longshoreman who is employed to engage in
33 direct and immediate checking of waterborne freight or of the
34 custodial accounting therefor or in the recording or tabulation of the
35 hours worked at piers or other waterfront terminals by natural
36 persons employed by carriers of freight by water or stevedores.
37    "Commission" means the waterfront commission of New York
38 harbor established by the State of New Jersey pursuant to P.L.1953,
39 c.202 (C.32:23-1 et seq.) and by the State of New York pursuant to
40 its agreement thereto under P.L.1953, c.882 (NY Unconsol.
41 Ch.307, s.1).
42    "Common carrier" means a common carrier as that term is
43 defined in 46 U.S.C. s.40102.
44    "Compact" means the compact entered into by the State of New
45 Jersey pursuant to its agreement thereto under P.L.1953, c.202
46 (C.32:23-1 et seq.) and by the State of New York pursuant to its
47 agreement thereto under P.L.1953, c.882 (NY Unconsol. Ch.307,
48 s.1), as amended and supplemented.

S3502 SWEENEY, SARLO
5

1    "Consignee" means the person designated on a bill of lading as
2 the recipient of waterborne freight consigned for carriage by water.
3    "Container" means any receptacle, box, carton, or crate which is
4 specifically designed and constructed so that it may be repeatedly
5 used for the carriage of freight by a carrier of freight by water.
6    "Contract carrier" means a contract carrier as that term is defined
7 in 49 U.S.C. s.13102.
8    "Division" means the Division of State Police in the Department
9 of Law and Public Safety.
10    "Freight" means freight which has been or will be, carried by, or
11 consigned for carriage by a carrier of freight by water.
12    "Hiring agent" means any natural person who, on behalf of a
13 carrier of freight by water or a stevedore, shall select any
14 longshoreman for employment, and "hiring agent" includes any
15 natural person, who on behalf of any other person shall select any
16 longshoreman for employment.
17    "Immunity" means that a person shall not be prosecuted or
18 subjected to any penalty or forfeiture for or on account of any
19 transaction, matter, or thing concerning which, pursuant to an order
20 of the division, the person gave answer or produced evidence, and
21 that no answer given or evidence produced shall be received against
22 the person upon any criminal proceeding.
23    "Labor organization" means and includes any organization which
24 exists and is constituted for the purpose in whole or in part of
25 collective bargaining, or of dealing with employers concerning
26 grievances, terms and conditions of employment, or other mutual
27 aid or protection, but "labor organization" shall not include a
28 federation or congress of labor organizations organized on a
29 national or international basis even though one of its constituent
30 labor organizations may represent persons so registered or licensed.
31    "Longshoreman" means a natural person, other than a hiring
32 agent, who is employed for work at a pier or other waterfront
33 terminal, either by a carrier of freight by water or by a stevedore, to:
34 a. physically move waterborne freight on vessels berthed at piers,
35 on piers or at other waterfront terminals; b. engage in direct and
36 immediate checking of any such freight or of the custodial
37 accounting therefor or in the recording or tabulation of the hours
38 worked at piers or other waterfront terminals by natural persons
39 employed by carriers of freight by water or stevedores; c. supervise
40 directly and immediately others who are employed as a
41 longshoreman; d. physically to perform labor or services incidental
42 to the movement of waterborne freight on vessels berthed at piers,
43 on piers or at other waterfront terminals; e. physically move
44 waterborne freight to or from a barge, lighter, or railroad car for
45 transfer to or from a vessel of a carrier of freight by water which is,
46 shall be, or shall have been berthed at the same pier or other
47 waterfront terminal; or f. perform labor or services involving, or

**S3502** SWEENEY, SARLO
6

1   incidental to, the movement of freight at a pier or other waterfront
2   terminal.
3       "Longshoremen's register" means the register of eligible
4   longshoremen compiled and maintained by the division pursuant to
5   section 8 of P.L.    , c.   (C.        ) (pending before the Legislature
6   as this bill).
7       "Marine terminal" means an area which includes piers, which is
8   used primarily for the moving, warehousing, distributing, or
9   packing of waterborne freight or freight to or from piers and which
10  is under common ownership or control with the pier.
11      "Other waterfront terminal" means any warehouse, depot, or
12  other terminal, other than a pier, which is located within a marine
13  terminal in the port of New York district and which is used for
14  waterborne freight in whole or substantial part, and includes any
15  warehouse, depot, or other terminal, other than a pier, whether
16  enclosed or open, which is located in a marine terminal in the port
17  of New York district, any part of which is used by any person to
18  perform labor or services involving, or incidental to, the movement
19  of waterborne freight or freight.
20      "Person" means not only a natural person but also any
21  partnership, joint venture, association, corporation, or any other
22  legal entity but shall not include the United States, any state or
23  territory thereof, or any department, division, board, authority, or
24  authority of one or more of the foregoing.
25      "Pier" means any wharf, pier, dock, or quay in regular use for the
26  movement of waterborne freight between vessel and shore.
27      "Pier superintendent" means any natural person other than a
28  longshoreman who is employed for work at a pier or other
29  waterfront terminal by a carrier of freight by water or a stevedore
30  and whose work at the pier or other waterfront terminal includes the
31  supervision, directly or indirectly, of the work of longshoremen.
32      "Port of New York district" or "district" means the district
33  created by Article II of the compact dated April 30, 1921, between
34  the states of New York and New Jersey, authorized by chapter 154
35  of the laws of New York of 1921 and chapter 151 of the laws of
36  New Jersey of 1921.
37      "Port watchman" means any watchman, gateman, roundsman,
38  detective, guard, guardian, or protector of property employed by the
39  operator of any pier or other waterfront terminal or by a carrier of
40  freight by water to perform services in that capacity on any pier or
41  other waterfront terminal.
42      "Select any longshoreman for employment" means select a
43  person for the commencement or continuation of employment as a
44  longshoreman, or the denial or termination of employment as a
45  longshoreman.
46      "Stevedore" means a contractor, not including an employee,
47  engaged for compensation pursuant to a contract or arrangement
48  with a carrier of freight by water, in moving waterborne freight

1    carried or consigned for carriage by the carrier on vessels of the
2    carrier berthed at piers, on piers at which the vessels are berthed or
3    at other waterfront terminals. "Stevedore" shall also include:   a.
4    a contractor engaged for compensation pursuant to a contract or
5    arrangement with the United States, any state or territory thereof, or
6    any department, division, board, commission, or authority of one or
7    more of the foregoing, in moving freight carried or consigned for
8    carriage between any point in the port of New York district and a
9    point outside that district on vessels of the public agency berthed at
10    piers, on piers at which their vessels are berthed or at other
11    waterfront terminals;   b.   a contractor, engaged for compensation
12    pursuant to a contract or arrangement with any person to perform
13    labor or services incidental to the movement of waterborne freight
14    on vessels berthed at piers, on piers or at other waterfront terminals;
15    or c. a contractor engaged for compensation pursuant to a contract
16    or arrangement with any other person to perform labor or services
17    involving, or incidental to, the movement of freight into or out of
18    containers, which have been or which will be carried by a carrier of
19    freight by water, on vessels berthed at piers, on piers or at other
20    waterfront terminals.
21       "State Treasurer" means the Treasurer of the State of New
22    Jersey.
23       "Terrorist group" means a group associated, affiliated, or funded
24    in whole or in part by a terrorist organization designated by the
25    United States Secretary of State in accordance with section 219 of
26    the federal Immigration and Nationality Act, as amended from time
27    to time, or any other organization which assists, funds, or engages
28    in crimes or acts of terrorism as defined in the laws of the United
29    States, or of this State.
30       "Transfer date" means the 90th day following the notification by
31    the Governor pursuant to section 2 of P.L.    , c.    (C.       )
32    (pending before the Legislature as this bill).
33       "Waterborne freight" means freight carried by or consigned for
34    carriage by carriers of freight by water, and shall also include
35    freight described in the definition of "stevedore" and in the
36    definition of "other waterfront terminal."   Provided, however, that
37    at the point at which the freight is released from a pier or marine
38    terminal to the possession of the consignee or the person designated
39    by the consignee, the freight shall no longer be considered
40    waterborne freight if:
41       a.   the freight is not further transported by water; and
42       b.   services involving or incidental to the unloading, storage,
43    inspection, grading, repackaging, or processing of freight occur at a
44    location outside a pier or marine terminal.
45       "Witness" means any person whose testimony is desired in any
46    investigation, interview, or other proceeding conducted by the
47    division    under    the    authority    granted    pursuant    to
48    P.L.   , c.    (C.      ) (pending before the Legislature as this bill).

**S3502** SWEENEY, SARLO
8

1    4. (New section)  a.   Until  the  transfer  date  established
2    pursuant to section 31 of P.L.   , c.   (C.       ) (pending before the
3    Legislature as this bill) shall have become operative, the division
4    shall  not  exercise  any  powers,  rights,  or  duties  conferred  by
5    P.L.    , c.  (C.       ) (pending before the Legislature as this bill)
6    or by any other law in any way which will interfere with the
7    powers, rights, and duties of the commission. The division and the
8    commission are directed to cooperate with each other after the date
9    of notification pursuant to section 2 of P.L.    , c.   (C.         )
10   (pending before the Legislature as this bill) until the transfer date,
11   and  the  commission  shall  make  available  to  the  division  all
12   information  concerning  its  property  and  assets,  contracts,
13   operations, and finances within New Jersey as the division may
14   require to provide for the efficient exercise by the division of all
15   powers, rights, and duties conferred upon the division by P.L.    , c.
16   (C.        ) (pending before the Legislature as this bill).
17       b.   After the transfer date established pursuant to section 31 of
18   P.L.    , c.  (C.        ) (pending before the Legislature as this bill):
19       (1)  The division shall assume all of the powers, rights, assets,
20   and duties of the commission within this State, and those powers,
21   rights, assets, and duties shall then and thereafter be vested in and
22   exercised by the division;
23       (2)  The officers having custody of the funds of the commission
24   applicable to this State shall deliver those funds into the custody of
25   the State Treasurer, the property and assets of the commission
26   within this State shall, without further act or deed, become the
27   property and assets of the division; and
28       (3)  Any officers and employees of the commission seeking to be
29   transferred to the division may apply to become employees of the
30   division until determined otherwise by the division.  Nothing in
31   P.L.    , c.  (C.       ) (pending before the Legislature as this bill)
32   shall  be  construed  to  deprive  any  officers  or  employees  of  the
33   commission of their rights, privileges, obligations, or status with
34   respect to any pension or retirement system.   The commission
35   employees shall retain all of their rights and benefits under existing
36   collective  negotiation  agreements  or  contracts  until  such  time  as
37   new or revised agreements or contracts are agreed to.  All existing
38   employee representatives shall be retained to act on behalf of those
39   employees until such time as the employees shall, pursuant to law,
40   elect  to  change  those  representatives.   If  an  existing  officer  or
41   employee becomes a member of an administered retirement system
42   of the State of New Jersey, the officer or employee shall receive the
43   same  amount  of  service  credit  in  the  retirement  system  as  the
44   officer or employee previously had in the pension or retirement
45   system as an employee of the commission, provided that there is a
46   transfer of funds, or purchase, of the full cost of that credit from the
47   pension  or  retirement  system  of  the  commission  to  an  administered
48   retirement system of the State of New Jersey. Nothing in P.L.    , c.

**S3502** SWEENEY, SARLO

9

1    (C.    ) (pending before the Legislature as this bill) shall affect the
2    civil service status, if any, of those officers or employees;
3        (4) All debts, liabilities, obligations, and contracts of the
4    commission applicable only to this State, as determined by the
5    officers having custody of the funds of the commission, except to
6    the extent specifically provided for or established to the contrary in
7    P.L.  , c.  (C.    ) (pending before the Legislature as this bill),
8    are imposed upon the division, and all creditors of the commission
9    and persons having claims against or contracts with the commission
10    of any kind or character may enforce those debts, claims, and
11    contracts against the division as successor to the commission in the
12    same manner as they might have done against the commission, and
13    the rights and remedies of those holders, creditors, and persons
14    having claims against or contracts with the commission shall not be
15    limited or restricted in any manner by P.L.  , c.  (C.    )
16    (pending before the Legislature as this bill);
17        (5) In continuing the functions, contracts, obligations, and duties
18    of the commission within this State, the division is authorized to act
19    in its own name as may be convenient or advisable under the
20    circumstances from time to time;
21        (6) Any references to the commission in any other law or
22    regulation shall then and thereafter be deemed to refer and apply to
23    the division;
24        (7) All rules and regulations of the commission shall continue in
25    effect as the rules and regulations of the division until amended,
26    supplemented, or rescinded by the division pursuant to the
27    "Administrative Procedure Act," P.L.1968, c.410 (C.52:14B-1 et
28    seq.). Regulations of the commission inconsistent with the
29    provisions of P.L.  , c.  (C.    ) (pending before the Legislature
30    as this bill) or of regulations of the division shall be deemed void;
31        (8) All operations of the commission within this State shall
32    continue as operations of the division until altered by the division as
33    provided or permitted pursuant to P.L.  , c.  (C.    ) (pending
34    before the Legislature as this bill); and
35        (9) The powers vested in the division by P.L.  , c.  (C.    )
36    (pending before the Legislature as this bill) shall be construed as
37    being in addition to, and not in diminution of, the powers heretofore
38    vested by law in the commission to the extent not otherwise altered
39    or provided for in P.L.  , c.  (C.    ) (pending before the
40    Legislature as this bill).
41        c. A license, registration, or permit issued by the commission
42    prior to the date of notification pursuant to section 2 of P.L.  , c.
43    (C.    ) (pending before the Legislature as this bill) shall, subject
44    to the terms of its issuance, continue to be valid on and after the
45    transfer date as a license, registration, or permit issued by the
46    division. An application for a license, registration, or permit filed
47    with the commission prior to and pending on that notification date

**S3502** SWEENEY, SARLO
10

1 shall, as of and from the notification date, be deemed to be filed
2 with and pending before the division.
3
4    5.   (New section) In addition to the powers and duties elsewhere
5 prescribed in law, the division shall have the power:
6    a.   To determine the location, size, and suitability of
7 accommodations necessary and desirable for the establishment and
8 maintenance of the employment information centers provided in
9 section 16 of P.L.   , c.   (C.      ) (pending before the Legislature
10 as this bill) and for administrative offices for the division;
11    b.   To administer and enforce the provisions of
12 P.L.   , c.   (C.      ) (pending before the Legislature as this bill);
13    c.   Consistent with the provisions of the "Administrative
14 Procedure Act," P.L.1968, c.410 (C.52:14B-1 et seq.), to adopt and
15 enforce rules and regulations as the division may deem necessary to
16 effectuate the purposes of P.L.   , c.   (C.      ) (pending before the
17 Legislature as this bill) or to prevent the circumvention or evasion
18 thereof;
19    d.   By its members and its properly designated officers, agents,
20 and employees, with respect to the implementation and enforcement
21 of P.L.   , c.   (C.      ) (pending before the Legislature as this
22 bill), to administer oaths and issue subpoenas to compel the
23 attendance of witnesses and the giving of testimony and the
24 production of other evidence;
25    e.   To have for its properly designated officers, agents and
26 employees, full and free access, ingress, and egress to and from all
27 vessels, piers, and other waterfront terminals or other places in the
28 port of New York district within this State, for the purposes of
29 making inspection or enforcing the provisions of
30 P.L.   , c.   (C.      ) (pending before the Legislature as this bill);
31 and no person shall obstruct or in any way interfere with any
32 officer, employee, or agent of the division in the making of an
33 inspection, or in the enforcement of the provisions of P.L.    , c.
34 (C.      ) (pending before the Legislature as this bill) or in the
35 performance of any other power or duty under P.L.   , c.   (C.      )
36 (pending before the Legislature as this bill);
37    f.   To recover possession of any suspended or revoked license
38 issued pursuant to sections 6, 7, and 13 of P.L.   , c.   (C.      )
39 (pending before the Legislature as this bill) within the port of New
40 York district in this State;
41    g.   To make investigations and collect and compile information
42 concerning waterfront practices generally within the port of New
43 York district in this State and upon all matters relating to the
44 accomplishment of the objectives of P.L.   , c.   (C.      ) (pending
45 before the Legislature as this bill);
46    h.   To advise and consult with representatives of labor and
47 industry and with public officials and agencies concerned with the
48 effectuation of the purposes of P.L.   , c.   (C.      ) (pending

S3502 SWEENEY, SARLO
11

1    before the Legislature as this bill), upon all matters which the
2    division may desire, including but not limited to, the form and
3    substance of rules and regulations, the administration of the
4    provisions of P.L.   , c.   (C.      ) (pending before the Legislature
5    as this bill), maintenance of the longshoremen's register, and
6    issuance and revocation of licenses;
7        i.   To make annual and other reports to the Governor and,
8    pursuant to section 2 of P.L.1991, c.164 (C.52:14-19.1), to the
9    Legislature containing recommendations for the improvement of the
10   conditions of waterfront labor within the port of New York district
11   in this State and for the effectuation of the purposes of P.L.   , c.
12   (C.      ) (pending before the Legislature as this bill).  The annual
13   reports shall state the division's findings and determinations as to
14   whether the public necessity still exists for: (1) the continued
15   registration of longshoremen; (2) the continued licensing of any
16   occupation or employment required to be licensed hereunder; and
17   (3) the continued public operation of the employment information
18   centers provided for in section 16 of P.L.   , c.   (C.      ) (pending
19   before the Legislature as this bill);
20       j.   To co-operate with and receive from any department,
21   division, bureau, board, commission, authority, or agency of this
22   State, or of any county or municipality thereof, any assistance and
23   data as will enable the division to properly to carry out its powers
24   and duties hereunder; and to request a department, division, bureau,
25   board, commission, authority, or agency, with the consent thereof,
26   to execute the division's functions and powers, as the public interest
27   may require; and
28       k.   To exercise the powers and duties of the division as
29   provided in P.L.   , c.   (C.      ) (pending before the Legislature as
30   this bill) to its officers, employees, and agents designated by the
31   division;
32       l.   To issue temporary permits and permit temporary
33   registrations under such terms and conditions as the division may
34   prescribe which shall be valid for a period to be fixed by the
35   division not in excess of six months;
36       m.   To require any applicant for a license or registration or any
37   prospective licensee to furnish facts and evidence as the division
38   may deem appropriate to enable it to ascertain whether the license
39   or registration should be granted;
40       n.   In any case in which the division has the power to revoke,
41   cancel or suspend any license, the division shall also have the
42   power to impose as an alternative to that revocation, cancellation, or
43   suspension, a penalty, which the licensee may elect to pay the
44   division in lieu of the revocation, cancellation, or suspension.  The
45   maximum penalty shall be $5,000 for each separate offense.  The
46   division may, for good cause shown, abate all or part of the penalty;

1     o.  To designate any officer, agent, or employee of the division
2  to be an investigator who shall be vested with all the powers of a
3  peace or police officer of the State of New Jersey;
4     p.  To confer immunity, in the following manner prescribed by
5  section 20 of P.L.  , c.  (C.    ) (pending before the Legislature
6  as this bill);
7     q.  To require any applicant or renewal applicant for registration
8  as a longshoreman, any applicant or renewal applicant for
9  registration as a checker, or any applicant or renewal applicant for
10  registration as a telecommunications system controller and any
11  person who is sponsored for a license as a pier superintendent or
12  hiring agent, any person who is an individual owner of an applicant
13  or renewal applicant stevedore, or any persons who are individual
14  partners of an applicant or renewal applicant stevedore, or any
15  officers, directors, or stockholders owning five percent or more of
16  any of the stock of an applicant or renewal applicant corporate
17  stevedore or any applicant or renewal applicant for a license as a
18  port watchman or any other category of applicant or renewal
19  applicant for registration or licensing within the division's
20  jurisdiction to be fingerprinted by the division at the cost and
21  expense of the applicant or renewal applicant;
22     r.  To exchange fingerprint data with and receive criminal
23  history record information from the Federal Bureau of Investigation
24  and the State Bureau of Identification for use in making the
25  determinations required by this section; and
26     s.  Notwithstanding any other provision of law, rule, or
27  regulation to the contrary, to require any applicant for employment
28  or employee of the division engaged in the implementation or
29  enforcement of P.L.  , c.  (C.    ) (pending before the
30  Legislature as this bill) to be fingerprinted at the cost and expense
31  of the applicant or employee and to exchange fingerprint data with
32  and receive criminal history record information from the Federal
33  Bureau of Investigation and the State Bureau of Identification for
34  use in the hiring or retention of those persons.
35
36     6.  (New section) a.  A person shall not act as a pier
37  superintendent or as a hiring agent within the port of New York
38  district in this State without first having obtained from the division
39  a license to act as a pier superintendent or hiring agent, as the case
40  may be, and a person shall not employ or engage another person to
41  act as a pier superintendent or hiring agent who is not so licensed.
42     b.  A license to act as a pier superintendent or hiring agent shall
43  be issued only upon the written application, under oath, of the
44  person proposing to employ or engage another person to act as a
45  pier superintendent or hiring agent, verified by the prospective
46  licensee as to the matters concerning the prospective licensee, and
47  shall state the following:
48     (1)  The full name and business address of the applicant;

S3502 SWEENEY, SARLO
13

1    (2)  The full name, residence, business address, if any, place and
2  date of birth, and social security number of the prospective licensee;
3    (3)  The present and previous occupations of the prospective
4  licensee, including the places where the person was employed and
5  the names of the person's employers;
6    (4)  Any further facts and evidence as may be required by the
7  division to ascertain the character, integrity, and identity of the
8  prospective licensee; and
9    (5)  That if a license is issued to the prospective licensee, the
10  applicant will employ the licensee as pier superintendent or hiring
11  agent, as the case may be.
12    c.  A license shall not be granted pursuant to this section:
13    (1)  Unless the division shall be satisfied that the prospective
14  licensee possesses good character and integrity;
15    (2)  If the prospective licensee has, without subsequent pardon,
16  been convicted by a court of the United States, or any State or
17  territory thereof, of the commission of, or the attempt or conspiracy
18  to commit, treason, murder, manslaughter, or any of the following
19  offenses: illegally using, carrying, or possessing a pistol or other
20  dangerous weapon; making or possessing burglar's instruments;
21  buying or receiving stolen property; unlawful entry of a building;
22  aiding an escape from prison; unlawfully possessing, possessing
23  with intent to distribute, sale, or distribution of a controlled
24  dangerous substance or a controlled dangerous substance analog; or
25  a violation prescribed in subsection g. of this section.   Any
26  prospective licensee ineligible for a license by reason of any
27  conviction under this paragraph may submit satisfactory evidence to
28  the division that the prospective licensee has for a period of not less
29  than five years, measured as hereinafter provided, and up to the
30  time of application, so acted as to warrant the grant of a license, in
31  which event the division may, in its discretion, issue an order
32  removing that ineligibility.  The five-year period shall be measured
33  either from the date of payment of any fine imposed upon that
34  person or the suspension of sentence or from the date of the
35  person's unrevoked release from custody by parole, commutation,
36  or termination of sentence; and
37    (3)  If the prospective licensee knowingly or willfully advocates
38  the desirability of overthrowing or destroying the government of the
39  United States by force or violence or shall be a member of a group
40  which advocates that desirability, knowing the purposes of a group
41  having that advocacy.
42    d.  When the application shall have been examined and further
43  inquiry and investigation made as the division shall deem proper
44  and when the division shall be satisfied therefrom that the
45  prospective licensee possesses the qualifications and requirements
46  prescribed in this section, the division shall issue and deliver to the
47  prospective licensee a license to act as pier superintendent or hiring
48  agent for the applicant, as the case may be, and shall inform the

1 applicant of this action.  The division may issue a temporary permit
2 to any prospective licensee for a license issued under this section
3 pending final action on an application made for that license.  Any
4 temporary permit shall be valid for a period not in excess of 30
5 days.
6     e.  A person shall not be licensed to act as a pier superintendent
7 or hiring agent for more than one employer, except at a single pier
8 or other waterfront terminal, but nothing in P.L.    , c.    (C.        )
9 (pending before the Legislature as this bill) shall be construed to
10 limit in any way the number of pier superintendents or hiring agents
11 any employer may employ.
12     f.  A license granted pursuant to this section shall continue
13 through the duration of the licensee's employment by the employer
14 who shall have applied for the license.
15     g.  Any license issued pursuant to this section may be revoked
16 or suspended for a period as the division deems in the public
17 interest or the licensee thereunder may be reprimanded for any of
18 the following offenses:
19     (1)  Conviction of a crime or act by the licensee or other cause
20 which would require or permit the person's disqualification from
21 receiving a license upon original application;
22     (2)  Fraud, deceit, or misrepresentation in securing the license, or
23 in the conduct of the licensed activity;
24     (3)  Violation of any of the provisions of P.L.    , c.    (C.        )
25 (pending before the Legislature as this bill);
26     (4)  Unlawfully possessing, possessing with intent to distribute,
27 sale, or distribution of a controlled dangerous substance or a
28 controlled dangerous substance analog;
29     (5)  Employing, hiring, or procuring any person in violation of
30 P.L.    , c.    (C.        ) (pending before the Legislature as this bill) or
31 inducing or otherwise aiding or abetting any person to violate the
32 terms of P.L.    , c.    (C.        ) (pending before the Legislature as
33 this bill);
34     (6)  Paying, giving, causing to be paid or given or offering to pay
35 or give to any person any valuable consideration to induce the other
36 person to violate any provision of P.L.    , c.    (C.        ) (pending
37 before the Legislature as this bill) or to induce any public officer,
38 agent, or employee to fail to perform the person's duty hereunder;
39     (7)  Consorting with known criminals for an unlawful purpose;
40     (8)  Transfer or surrender of possession of the license to any
41 person either temporarily or permanently without satisfactory
42 explanation;
43     (9)  False impersonation of another licensee under P.L.    , c.
44 (C.        ) (pending before the Legislature as this bill);
45     (10) Receipt or solicitation of anything of value from any person
46 other than the licensee's employer as consideration for the selection
47 or retention for employment of any longshoreman;

S3502 SWEENEY, SARLO
15

1    (11) Coercion of a longshoreman by threat of discrimination or
2 violence or economic reprisal, to make purchases from or to utilize
3 the services of any person;
4    (12) Lending any money to or borrowing any money from a
5 longshoreman for which there is a charge of interest or other
6 consideration; or
7    (13) Membership in a labor organization which represents
8 longshoremen or port watchmen; but nothing in this section shall be
9 deemed to prohibit pier superintendents or hiring agents from being
10 represented by a labor organization or organizations which do not
11 also represent longshoremen or port watchmen. The American
12 Federation of Labor, the Congress of Industrial Organizations and
13 any other similar federation, congress, or other organization of
14 national or international occupational or industrial labor
15 organizations shall not be considered an organization which
16 represents longshoremen or port watchmen within the meaning of
17 this section although one of the federated or constituent labor
18 organizations thereof may represent longshoremen or port
19 watchmen.
20
21    7. (New section) a. A person shall not act as a stevedore
22 within the port of New York district in this State without having
23 first obtained a license from the division, and a person shall not
24 employ a stevedore to perform services as such within the port of
25 New York district unless the stevedore is so licensed.
26    b. Any person intending to act as a stevedore within the port of
27 New York district shall file in the office of the division a written
28 application for a license to engage in that occupation, duly signed,
29 and verified as follows:
30    c. If the applicant is a natural person, the application shall be
31 signed and verified by that person and if the applicant is a
32 partnership, the application shall be signed and verified by each
33 natural person composing or intending to compose that partnership.
34 The application shall state the full name, age, residence, business
35 address, if any, present and previous occupations of each natural
36 person so signing the application, and any other facts and evidence
37 as may be required by the division to ascertain the character,
38 integrity, and identity of each natural person signing the
39 application.
40    d. If the applicant is a corporation, the application shall be
41 signed and verified by the president, secretary, and treasurer
42 thereof, and shall specify the name of the corporation, the date and
43 place of its incorporation, the location of its principal place of
44 business, the names and addresses of, and the amount of the stock
45 held by stockholders owning five percent or more of any of the
46 stock thereof, and of all officers, including all members of the board
47 of directors. The requirements of subsection a. of this section as to
48 a natural person who is a member of a partnership, and the

S3502 SWEENEY, SARLO
16

1    requirements as may be specified in rules and regulations
2    promulgated by the division pursuant to the "Administrative
3    Procedure Act," P.L.1968, c.410 (C.52:14B-1 et seq.), shall apply to
4    each above-named officer or stockholder and their successors in
5    office or interest, as the case may be.
6      In the event of the death, resignation, or removal of any officer,
7    and in the event of any change in the list of stockholders who shall
8    own five percent or more of the stock of the corporation, the
9    secretary of the corporation shall forthwith give notice of that fact
10   in writing to the division, certified by the secretary.
11     e.  A license shall not be granted:
12    (1) If any person whose signature or name appears in the
13   application is not the real party in interest, required by subsection d.
14   of this section, to sign or to be identified in the application or if the
15   person so signing or named in the application is an undisclosed
16   agent or trustee for any real party in interest;
17    (2) Unless the division shall be satisfied that the applicant and
18   all members, officers, and stockholders required by subsection d. of
19   this section to sign or be identified in the application for license
20   possess good character and integrity;
21    (3) Unless the applicant is either a natural person, partnership,
22   or corporation;
23    (4) Unless the applicant shall be a party to a contract then in
24   force or which will take effect upon the issuance of a license, with a
25   carrier of freight by water for the loading and unloading by the
26   applicant of one or more vessels of such carrier at a pier within the
27   port of New York district;
28    (5) If the applicant or any member, officer, or stockholder
29   required by subsection d. of this section to sign or be identified in
30   the application for license has, without subsequent pardon, been
31   convicted by a court of the United States or any State or territory
32   thereof of the commission of, or the attempt or conspiracy to
33   commit, treason, murder, manslaughter, or any of the offenses
34   described in subsection h. of this section.  Any applicant ineligible
35   for a license by reason of any of those convictions may submit
36   satisfactory evidence to the division that the person whose
37   conviction was the basis of ineligibility has for a period of not less
38   than five years, measured as hereinafter provided and up to the time
39   of application, so acted as to warrant the grant of that license, in
40   which event the division may, in its discretion issue an order
41   removing that ineligibility.  The aforesaid period of five years shall
42   be measured either from the date of payment of any fine imposed
43   upon that person or the suspension of sentence or from the date of
44   the person's unrevoked release from custody by parole,
45   commutation, or termination of sentence;
46    (6) If the applicant has paid, given, caused to have been paid or
47   given, or offered to pay or give to any officer or employee of any
48   carrier of freight by water any valuable consideration for an

1   improper or unlawful purpose or to induce that person to procure
2   the employment of the applicant by the carrier for the performance
3   of stevedoring services; or
4      (7) If the applicant has paid, given, caused to be paid or given,
5   or offered to pay or give to any officer or representative of a labor
6   organization any valuable consideration for an improper or unlawful
7   purpose or to induce the officer or representative to subordinate the
8   interests of the labor organization or its members in the
9   management of the affairs of the labor organization to the interests
10  of the applicant.
11     f.  When the application shall have been examined and further
12  inquiry and investigation made as the division shall deem proper
13  and when the division shall be satisfied therefrom that the applicant
14  possesses the qualifications and requirements prescribed in this
15  section, the division shall issue and deliver a license to that
16  applicant.  The division may issue a temporary permit to any
17  applicant for a license under the provisions of this section pending
18  final action on an application made for a license.  A temporary
19  permit shall be valid for a period not in excess of 30 days.
20     g.  A stevedore's license shall be for a term of five years or
21  fraction of that five-year period, and shall expire on the first day of
22  December.  In the event of the death of the licensee, if a natural
23  person, or its termination or dissolution by reason of the death of a
24  partner, if a partnership, or if the licensee shall cease to be a party
25  to any contract of the type prescribed by paragraph (4) of
26  subsection e. of section 7 of P.L.    , c.   (C.      ) (pending before
27  the Legislature as this bill), the license shall terminate 90 days after
28  that event or upon its expiration date, whichever shall be sooner.  A
29  license may be renewed by the division for successive five-year
30  periods upon fulfilling the same requirements as are established in
31  this section for an original application for a stevedore's license.
32     h.  Any license issued pursuant to this section may be revoked
33  or suspended for a period as the division deems in the public
34  interest or the licensee thereunder may be reprimanded for any of
35  the following offenses on the part of the licensee or of any person
36  required by this section to sign or be identified in an original
37  application for a license:
38     (1) Conviction of a crime or other cause which would permit or
39  require disqualification of the licensee from receiving a license
40  upon original application;
41     (2) Fraud, deceit, or misrepresentation in securing the license or
42  in the conduct of the licensed activity;
43     (3) Failure by the licensee to maintain a complete set of books
44  and records containing a true and accurate account of the licensee's
45  receipts and disbursements arising out of the licensee's activities
46  within the port of New York district in this State;
47     (4) Failure to keep its books and records available during
48  business hours for inspection by the division and its duly designated

1 representatives until the expiration of the fifth calendar year
2 following the calendar year during which occurred the transactions
3 recorded therein; or
4    (5) Any other offense described in this section.
5    i.  In addition to the grounds elsewhere established in P.L.    , c.
6 (C.        ) (pending before the Legislature as this bill), the division
7 shall not grant an application for a license as stevedore if the
8 applicant has paid, given, caused to have been paid or given, or
9 offered to pay or give to any agent of any carrier of freight by water
10 any valuable consideration for an improper or unlawful purpose or,
11 without the knowledge and consent of the carrier, to induce the
12 agent to procure the employment of the applicant by the carrier or
13 its agent for the performance of stevedoring services.
14
15    8. (New  section)  a.  The  division  shall  establish  a
16 longshoremen's register in which shall be included all qualified
17 longshoremen eligible, as hereinafter provided, for employment as
18 longshoremen in the port of New York district in this State.  A
19 person shall not act as a longshoreman within the port of New York
20 district in this State unless at the time the person is included in the
21 longshoremen's register, and a person shall not employ another to
22 work as a longshoreman within the port of New York district in this
23 State unless at the time the other person is included in the
24 longshoremen's register.
25    b.  Any person applying for inclusion in the longshoremen's
26 register shall file at a place and in a manner as the division shall
27 designate a written statement, signed, and verified by the applicant,
28 setting forth the applicant's full name, residence address, social
29 security number, and any further facts and evidence as the division
30 may prescribe to establish the identity of that person and the
31 person's criminal record, if any.
32    c.  The division may in its discretion deny application for
33 inclusion in the longshoremen's register by a person:
34    (1) Who has been convicted by a court of the United States or
35 any State or territory thereof, without subsequent pardon, of
36 treason, murder, manslaughter, or of any of the offenses described
37 in subsection g. of section 6 of P.L.    , c.    (C.        ) (pending
38 before the Legislature as this bill) or of attempt or conspiracy to
39 commit any of those crimes;
40    (2) Who knowingly or willingly advocates the desirability of
41 overthrowing or destroying the government of the United States by
42 force or violence or who shall be a member of a group which
43 advocates that desirability knowing the purposes of the group
44 advocating that desirability; or
45    (3) Whose presence at the piers or other waterfront terminals in
46 the port of New York district in this State is found by the division,
47 on the basis of the facts and evidence before it, to constitute a
48 danger to the public peace or safety.

1     d. Unless the division shall determine to exclude the applicant
2    from the longshoremen's register for violation of the offenses
3    described in subsection g. of section 6 of P.L.  , c.  (C.   )
4    (pending before the Legislature as this bill), it shall include that
5    person in the longshoremen's register. The division may permit
6    temporary registration of any applicant under the provisions of this
7    section pending final action on an application made for temporary
8    registration. Any temporary registration shall be valid for a period
9    not in excess of 30 days.
10    e. The division shall have power to reprimand any
11    longshoreman registered under this section or to remove the person
12    from the longshoremen's register for a period of time as it deems in
13    the public interest for any of the following offenses:
14    (1) Conviction of a crime or other cause which would permit
15    disqualification of a person from inclusion in the longshoremen's
16    register upon original application;
17    (2) Fraud, deceit, or misrepresentation in securing inclusion in
18    the longshoremen's register;
19    (3) Transfer or surrender of possession to any person either
20    temporarily or permanently of any card or other means of
21    identification issued by the authority as evidence of inclusion in the
22    longshoremen's register, without satisfactory explanation;
23    (4) False impersonation of another longshoreman registered
24    under this section or of another person licensed pursuant to
25    P.L.  , c.  (C.   ) (pending before the Legislature as this bill);
26    (5) Willful commission of or willful attempt to commit at or on
27    a waterfront terminal or adjacent highway any act of physical injury
28    to any other person or of willful damage to or misappropriation of
29    any other person's property, unless justified or excused by law; and
30    (6) Any other offense described in subsection g. of section 6 of
31    P.L.  , c.  (C.   ) (pending before the Legislature as this bill).
32    f. Whenever, as a result of amendments to P.L.   , c.
33    (C.   ) (pending before the Legislature as this bill) or of a ruling
34    by the division, registration as a longshoreman is required for any
35    person to continue in employment, that person shall be registered as
36    a longshoreman; provided, however, that the person satisfies all the
37    other requirements of P.L.  , c.  (C.   ) (pending before the
38    Legislature as this bill) for registration as a longshoreman.
39    g. The division shall have the right to recover possession of
40    any card or other means of identification issued as evidence of
41    inclusion in the longshoremen's register in the event that the holder
42    thereof has been removed from the longshoremen's register.
43    h. Nothing contained in P.L.  , c.  (C.   ) (pending before
44    the Legislature as this bill) shall be construed to limit in any way
45    any labor rights reserved by P.L.  , c.  (C.   ) (pending before
46    the Legislature as this bill).

**S3502** SWEENEY, SARLO
20

1      9.  (New section)  a.  The division shall, at regular intervals,
2   remove from the longshoremen's register any person who shall have
3   been registered for at least nine months and who shall have failed
4   during the preceding six calendar months either to have worked as a
5   longshoreman in the port of New York district in this State or to
6   have applied for employment as a longshoreman at an employment
7   information   center   established   under   section   16   of
8   P.L.   , c.  (C.      ) (pending before the Legislature as this bill)
9   for the minimum number of days as shall have been established by
10  the division pursuant to subsection b. of this section.
11     b.  On or before the first day of June following the date on
12  which P.L.  , c.  (C.      ) (pending before the Legislature as this
13  bill) becomes operative, and on or before each succeeding first day
14  of June or December, the division shall, for the purposes of
15  P.L.   , c.  (C.      ) (pending before the Legislature as this bill),
16  establish  for  the  six-month  period  beginning  on  each  date  a
17  minimum number of days and the distribution of the days during
18  that period.
19     c.  In establishing any minimum number of days or period, the
20  division shall consult with the collective bargaining representatives
21  of stevedores and other employers of longshoremen in the port of
22  New  York  district  and  with  labor  organizations  representing
23  longshoremen in the district.
24     d.  A  longshoreman  who  has  been  removed  from  the
25  longshoremen's register pursuant to subsection e. of section 8 of
26  P.L.   , c.  (C.      ) (pending before the Legislature as this bill)
27  may seek reinstatement upon fulfilling the same requirements as for
28  initial inclusion in the longshoremen's register, but not before the
29  expiration of one year from the date of removal, except that
30  immediate reinstatement shall be made upon proper showing that
31  the registrant's failure to work or apply for work for the minimum
32  number of days, described in subsection c. of this section, was
33  caused by the fact that the registrant was engaged in the military
34  service of the United States or was incapacitated by ill health,
35  physical injury, or other good cause.
36     e.  Notwithstanding any other provision of P.L.   , c.  (C.     )
37  (pending before the Legislature as this bill), the division shall at any
38  time have the power to register longshoremen on a temporary basis
39  to meet special or emergency needs.
40
41     10. (New section)  Notwithstanding  any  other  provisions  of
42  P.L.   , c.  (C.      ) (pending before the Legislature as this bill),
43  the  division  shall  have  the  power  to  remove  from  the
44  longshoremen's register any person, including a person registered as
45  longshoremen for less than nine months, who shall have failed to
46  have worked as a longshoreman in the port of New York district in
47  this State for a minimum number of days during a period of time as
48  shall have been established by the division.  In administering this

1   section, the division, in its discretion, may count applications for
2   employment as a longshoreman at an employment information
3   center established pursuant to section 16 of P.L.    , c.    (C.        )
4   (pending before the Legislature as this bill) as constituting actual
5   work as a longshoreman, provided, however, that the division shall
6   count as actual work the compensation received by any
7   longshoreman pursuant to the guaranteed wage provisions of any
8   collective bargaining agreement relating to longshoremen.  Prior to
9   the commencement of any period of time established by the division
10  pursuant to this section, the division shall establish for that period
11  the minimum number of days of work required and the distribution
12  of days during that period and shall also determine whether or not
13  application for employment as a longshoreman shall be counted as
14  constituting actual work as a longshoreman.  The division may
15  classify longshoremen according to length of service as a
16  longshoreman and develop other criteria as may be reasonable and
17  necessary to carry out the provisions of P.L.    , c.    (C.        )
18  (pending before the Legislature as this bill).  The division shall
19  have the power to vary the requirements of this section with respect
20  to their application to the various classifications of longshoremen.
21  In administering this section, the division shall observe the
22  standards set forth in section 2 of P.L.1966, c.18 (C.32:23-114), as
23  that section shall have been amended through the enactment of
24  P.L.1999, c.206.  Nothing in this section shall be construed to
25  modify, limit, or restrict in any way any of the rights protected by
26  section 23 of P.L.    , c.    (C.        ) (pending before the Legislature
27  as this bill).
28
29     11. (New section)  a.  The division shall establish within the
30  longshoremen's register a list of all qualified longshoremen eligible,
31  as hereinafter provided, for employment as checkers in the port of
32  New York district in this State.  A person shall not act as a checker
33  within the port of New York district in this State unless at the time
34  the person is included in the longshoremen's register as a checker,
35  and a person shall not employ another to work as a checker within
36  the port of New York district in this State unless at the time such
37  other person is included in the longshoremen's register as a checker.
38     b.  Any person applying for inclusion in the longshoremen's
39  register as a checker shall file at a place and in a manner as the
40  division shall designate a written statement, signed, and verified by
41  the applicant, setting forth the following:
42     (1)  The full name, residence, place and date of birth, and social
43  security number of the applicant;
44     (2)  The present and previous occupations of the applicant,
45  including the places where the applicant was employed and the
46  names of the applicant's employers; and

**S3502** SWEENEY, SARLO
22

1    (3) Any further facts and evidence as may be required by the
2  authority to ascertain the character, integrity, and identity of the
3  applicant.
4    c.  A person shall not be included in the longshoremen's register
5  as a checker:
6    (1) Unless the division shall be satisfied that the applicant
7  possesses good character and integrity;
8    (2) If the applicant has, without subsequent pardon, been
9  convicted by a court of the United States or any State or territory
10  thereof, of the authority of, or the attempt or conspiracy to commit
11  treason, murder, manslaughter, or any of the following offenses:
12  illegally using, carrying or possessing a pistol or other dangerous
13  weapon; making or possessing burglar's instruments; buying or
14  receiving stolen property; unlawful entry of a building; aiding an
15  escape from prison; unlawfully possessing, possessing with intent to
16  distribute, sale or distribution of a controlled dangerous substance
17  or a controlled dangerous substance analog; petty larceny, where
18  the evidence shows the property was stolen from a vessel, pier or
19  other waterfront terminal; or a violation of P.L.    , c.   (C.        )
20  (pending before the Legislature as this bill).  An applicant ineligible
21  for inclusion in the longshoremen's register as a checker by reason
22  of a conviction may submit satisfactory evidence to the division that
23  the applicant has for a period of not less than five years, measured
24  as hereinafter provided, and up to the time of application, so acted
25  as to warrant inclusion in the longshoremen's register as a checker,
26  in which event the division may, in its discretion, issue an order
27  removing the applicant's ineligibility.  The five-year period shall be
28  measured either from the date of payment of any fine imposed upon
29  that person or the suspension of sentence or from the date of the
30  person's unrevoked release from custody by parole, commutation,
31  or termination of sentence; or
32    (3) If the applicant knowingly or willfully advocates the
33  desirability of overthrowing or destroying the government of the
34  United States by force or violence or shall be a member of a group
35  which advocates that desirability, knowing the purposes of the
36  group advocating that desirability.
37    d.  When the application shall have been examined and further
38  inquiry and investigation made as the division shall deem proper
39  and when the division shall be satisfied therefrom that the applicant
40  possesses the qualifications and requirements prescribed by this
41  section, the division shall include the applicant in the
42  longshoremen's register as a checker.  The division may permit
43  temporary registration as a checker to any applicant under this
44  section pending final action on an application made for temporary
45  registration, under the terms and conditions as the division may
46  prescribe, which shall be valid for a period to be fixed by the
47  division, not in excess of six months.

**S3502** SWEENEY, SARLO
23

1    e.  The division shall have power to reprimand any checker
2  registered under this section or to remove the person from the
3  longshoremen's register as a checker for a period of time as the
4  division deems in the public interest for any of the following
5  offenses:
6    (1)  Conviction of a crime or other cause which would permit
7  disqualification of the person from inclusion in the longshoremen's
8  register as a checker upon original application;
9    (2)  Fraud, deceit, or misrepresentation in securing inclusion in
10  the longshoremen's register as a checker or in the conduct of the
11  registered activity;
12    (3)  Violation of any of the provisions of P.L.    , c.    (C.        )
13  (pending before the Legislature as this bill);
14    (4)  Unlawfully possessing, possessing with intent to distribute,
15  sale, or distribution of a controlled dangerous substance or a
16  controlled dangerous substance analog;
17    (5)  Inducing or otherwise aiding or abetting any person to
18  violate the terms of P.L.    , c.    (C.        ) (pending before the
19  Legislature as this bill);
20    (6)  Paying, giving, causing to be paid or given, or offering to
21  pay or give to any person any valuable consideration to induce the
22  other person to violate any provision of P.L.    , c.    (C.        )
23  (pending before the Legislature as this bill) or to induce any public
24  officer, agent, or employee to fail to perform the person's duty
25  under P.L.    , c.    (C.        ) (pending before the Legislature as this
26  bill);
27    (7)  Consorting with known criminals for an unlawful purpose;
28    (8)  Transfer or surrender of possession to any person either
29  temporarily or permanently of any card or other means of
30  identification issued by the division as evidence of inclusion in the
31  longshoremen's register without satisfactory explanation; or
32    (9)  False impersonation of another longshoreman or of another
33  person licensed under P.L.    , c.    (C.        ) (pending before the
34  Legislature as this bill).
35    f.  The division shall have the right to recover possession of
36  any card or other means of identification issued as evidence of
37  inclusion in the longshoremen's register as a checker in the event
38  that the holder thereof has been removed from the longshoremen's
39  register as a checker.
40    g.  Nothing contained in this section shall be construed to limit
41  in any way any rights of labor reserved by section 23 of P.L.    , c.
42  (C.        ) (pending before the Legislature as this bill).
43
44    12.  (New section)  The division shall accept applications for
45  inclusion in the longshoremen's register upon:
46    a.  the joint recommendation in writing of stevedores and other
47  employers of longshoremen in the port of New York district in this
48  State, acting through their representative for the purposes of

1 collective bargaining with a labor organization representing the
2 longshoremen in the district, and that labor organization; or
3    b.   the petition in writing of a stevedore or other employer of
4 longshoremen in the port of New York district in this State which
5 does not have a representative for the purposes of collective
6 bargaining with a labor organization representing those
7 longshoremen.
8
9    13. (New section)  a.  A person shall not act as a port watchman
10 within the port of New York district in this State without first
11 having obtained a license from the division, and a person shall not
12 employ a port watchman who is not so licensed.
13    b.  A license to act as a port watchman shall be issued only
14 upon written application, duly verified, which shall state the
15 following:
16    (1)  The full name, residence, business address, if any, place, and
17 date of birth, and social security number of the applicant;
18    (2)  The present and previous occupations of the applicant,
19 including the places where the applicant was employed and the
20 names of the applicant's employers;
21    (3)  The citizenship of the applicant and, if the person is a
22 naturalized citizen of the United States, the court and date of
23 naturalization; and
24    (4)  Any further facts and evidence as may be required by the
25 division to ascertain the character, integrity, and identity of the
26 applicant.
27    c.  A port watchman license shall not be granted:
28    (1)  Unless the division shall be satisfied that the applicant
29 possesses good character and integrity;
30    (2)  If the applicant has, without subsequent pardon, been
31 convicted by a court of the United States or of any State or territory
32 thereof of the authority of, or the attempt or conspiracy to commit,
33 treason, murder, manslaughter or any of the offenses described in
34 subsection g. of section 6 of P.L.    , c.   (C.        ) (pending before
35 the Legislature as this bill);
36    (3)  Unless the applicant shall meet reasonable standards of
37 physical and mental fitness for the discharge of a port watchman's
38 duties as may from time to time be established by the division;
39    (4)  If the applicant shall be a member of any labor organization
40 which represents longshoremen or pier superintendents or hiring
41 agents; but nothing in P.L.    , c.   (C.        ) (pending before the
42 Legislature as this bill) shall be deemed to prohibit port watchmen
43 from being represented by a labor organization or organizations
44 which do not also represent longshoremen or pier superintendents
45 or hiring agents.  The American Federation of Labor, the Congress
46 of Industrial Organizations (AFL-CIO) and any other similar
47 federation, congress, or other organization of national or
48 international occupational or industrial labor organizations shall not

1    be considered a labor organization which represents longshoremen
2    or pier superintendents or hiring agents within the meaning of this
3    section although one of the federated or constituent labor
4    organizations thereof may represent longshoremen or pier
5    superintendents or hiring agents;
6       (5) If the applicant knowingly or willfully advocates the
7    desirability of overthrowing or destroying the government of the
8    United States by force or violence or shall be a member of a group
9    which advocates that desirability, knowing the purposes of the
10   group's advocacy.
11      d. When the application shall have been examined and further
12   inquiry and investigation made as the division shall deem proper
13   and when the authority shall be satisfied therefrom that the
14   applicant possesses the qualifications and requirements prescribed
15   in this section and regulations issued pursuant thereto, the division
16   shall issue and deliver a license to the applicant. The division may
17   issue a temporary permit to any applicant for a license under the
18   provisions of this section pending final action on an application
19   made for that license. Any temporary permit shall be valid for a
20   period not in excess of 30 days.
21      e. A license granted pursuant to this section shall continue for a
22   term of three years. A license may be renewed by the division for
23   successive three-year periods upon fulfilling the same requirements
24   established in this section for an original application.
25      f. Notwithstanding any provision of this section, a license to
26   act as a port watchman shall continue indefinitely and need not be
27   renewed, provided that the licensee shall, as required by the
28   division:
29   (1) Submit to a medical examination and meet the physical and
30   mental fitness standards may be established by the division;
31   (2) Complete a refresher course of training; and
32   (3) Submit supplementary personal history information.
33      g. Any license issued pursuant to this section may be revoked
34   or suspended for a period as the division deems in the public
35   interest or the licensee thereunder may be reprimanded for any of
36   the following offenses:
37   (1) Conviction of a crime or other cause which would permit or
38   require the holder's disqualification from receiving a license upon
39   original application;
40   (2) Fraud, deceit, or misrepresentation in securing the license;
41   and
42   (3) Any other offense described in subsection g. of section 6 of
43   P.L.   , c.   (C.       ) (pending before the Legislature as this bill).
44      h. The division shall, at regular intervals, cancel the license or
45   temporary permit of a port watchman who has failed during the
46   preceding 12 months to work as a port watchman in the port of New
47   York district in this State a minimum number of hours as
48   established by the division, except that the division shall

1   immediately restore the license or temporary permit upon a proper
2   showing that the failure to so work was caused by the fact that the
3   licensee or permit holder was engaged in the military service of the
4   United States or was incapacitated by ill health, physical injury, or
5   other good cause.
6      i.   Any port watchman ineligible for a license by reason
7   pursuant to this section may petition for and the division may issue
8   an order removing the ineligibility.  A petition for an order to
9   remove an ineligibility may be made to the division before or after
10  the hearing required by section 14 of P.L.  , c.  (C.    ) (pending
11  before the Legislature as this bill).
12
13     14.  (New section)   a.   The division shall not deny any
14  application for a license or registration without giving the applicant
15  or prospective licensee reasonable prior notice and an opportunity
16  to be heard at a hearing conducted by the division.
17     b.   Any application for a license or for inclusion in the
18  longshoremen's register, and any license issued or registration
19  made, may be denied, revoked, cancelled, or suspended as the case
20  may be, only in the manner prescribed in this section.
21     c.   The division may on its own initiative or on complaint of
22  any person, including any public official or agency, institute
23  proceedings to revoke, cancel, or suspend any license or registration
24  after a hearing at which the licensee or registrant and any person
25  making a complaint shall be given an opportunity to be heard,
26  provided that any order of the division revoking, cancelling, or
27  suspending any license or registration shall not become effective
28  until 15 days subsequent to the serving of notice thereof upon the
29  licensee or registrant unless in the opinion of the division the
30  continuance of the license or registration for that period would be
31  inimical to the public peace or safety.  The hearing shall be held in
32  a manner and upon notice as may be prescribed by the rules of the
33  division, but the notice shall be of not less than 10 days and shall
34  state the nature of the complaint.
35     d.  Pending the determination of a hearing pursuant to this
36  section, the division may temporarily suspend a license or
37  registration if, in the opinion of the division, the continuance of the
38  license or registration for that 15-day period, pursuant to subsection
39  c. of this section, is inimical to the public peace or safety.
40     e.   The division, or a member, officer, employee, or agent of the
41  division as may be designated by the division for such purpose,
42  shall have the power to issue subpoenas to compel the attendance of
43  witnesses and the giving of testimony or production of other
44  evidence and to administer oaths in connection with a hearing.  It
45  shall be the duty of the division or of any member, officer,
46  employee, or agent of the division designated by the division for
47  that purpose to issue subpoenas at the request of and upon behalf of
48  the licensee, registrant, or applicant.  The person conducting the

1  hearing on behalf of the division shall not be bound by common law
2  or statutory rules of evidence or by technical or formal rules of
3  procedure in conducting the hearing.
4      f.   Upon the conclusion of the hearing, the division shall take
5  action upon the findings and determination as the division deems
6  proper and shall execute an order carrying its findings into effect.
7  The action in the case of an application for a license or registration
8  shall be the granting or denial thereof.  The action in the case of a
9  licensee shall be revocation of the license or suspension thereof for
10  a fixed period or reprimand or a dismissal of the charges.  The
11  action in the case of a registered longshoreman shall be dismissal of
12  the charges, reprimand, or removal from the longshoremen's
13  register for a fixed period or permanently.
14      g.   The action of the division, in denying any application for a
15  license or in refusing to include any person in the longshoremen's
16  register established pursuant to section 8 of P.L.    , c.    (C.        )
17  (pending before the Legislature as this bill), or in suspending or
18  revoking a license or removing any person from the longshoremen's
19  register or in reprimanding a licensee, or registrant, shall be subject
20  to judicial review by a proceeding instituted in this State at the
21  instance of the applicant, licensee, or registrant in the manner
22  provided by State law for review of the final decision or action of
23  an administrative agency of the State; provided, however, that
24  notwithstanding any other provision of law, the court shall have
25  power to stay for not more than 30 days an order of the division
26  suspending or revoking a license or removing a longshoreman from
27  the longshoremen's register.
28
29      15.  (New section)  a.   At hearings conducted by the division,
30  pursuant to section 14 of P.L.    , c.    (C.        ) (pending before the
31  Legislature as this bill), applicants, prospective licensees, licensees,
32  and registrants shall have the right to be accompanied and
33  represented by counsel.
34      b.   After the conclusion of a hearing but prior to the making of
35  an order by the division, a hearing may, upon petition and in the
36  discretion of the hearing officer, be reopened for the presentation of
37  additional evidence.  A petition to reopen the hearing shall state in
38  detail the nature of the additional evidence, together with the
39  reasons for the failure to submit such evidence prior to the
40  conclusion of the hearing.  The division may upon its own motion
41  and upon reasonable notice reopen a hearing for the presentation of
42  additional evidence.  Upon petition, after the making of an order of
43  the division, rehearing may be granted in the discretion of the
44  division.  A petition for rehearing shall state in detail the grounds
45  upon which the petition is based and shall separately set forth each
46  error of law and fact alleged to have been made by the division in
47  its determination, together with the facts and arguments in support
48  thereof.  The petition shall be filed with the division not later than

S3502 SWEENEY, SARLO
28

1   30 days after service of the division's order, unless the division for
2   good cause shown shall otherwise direct.  The division may upon its
3   own motion grant a rehearing after the making of an order.
4
5     16.  (New section)  a.  The division is hereby designated on its
6   own behalf or as agent of the State of New Jersey, as provided by
7   the act of Congress of the United States, effective June 6, 1933,
8   entitled "An act to provide for the establishment of a national
9   employment system and for co-operation with the states in the
10  promotion of such system and for other purposes," as amended, for
11  the purpose of obtaining the benefits of that act of Congress as are
12  necessary or appropriate to the establishment and operation of
13  employment information centers authorized by this section.
14    b.  The division shall have all powers necessary to take steps to
15  formulate plans and to execute projects related to the establishment
16  and operation of employment information centers, as may be
17  necessary to obtain any benefits for the operation of employment
18  information centers in accomplishing the purposes of P.L.    , c.
19  (C.    ) (pending before the Legislature as this bill).
20    c.  Any officer or agency designated by this State, pursuant to
21  the act of June 6, 1933, as amended, is authorized and empowered,
22  upon the request of the division and subject to its direction, to
23  exercise the powers and duties conferred upon the division by the
24  provisions of this section.
25    d.  The division shall establish and maintain one or more
26  employment information centers within the port of New York
27  district in this State at locations as the division may determine.  A
28  person shall not, directly or indirectly, hire any person for work as a
29  longshoreman or port watchman within the port of New York
30  district in this State, except through an employment information
31  center as may be prescribed by the division.  A person shall not
32  accept any employment as a longshoreman or port watchman within
33  the port of New York district in this State, except through an
34  employment information center.  At each employment information
35  center, the division shall keep and exhibit the longshoremen's
36  register and any other records the division shall determine to the
37  end that longshoremen and port watchmen shall have the maximum
38  information as to available employment at any time within the port
39  of New York district in this State and that employers shall have an
40  adequate opportunity to fill their requirements of registered
41  longshoremen and port watchmen at all times.
42    e.  Every employer of longshoremen or port watchmen within
43  the port of New York district in this State shall furnish information
44  as may be required by the rules and regulations prescribed by the
45  division with regard to the name of each person hired as a
46  longshoreman or port watchman, the time and place of hiring, the
47  time, place, and hours of work, and the compensation therefor.

S3502 SWEENEY, SARLO
29

1    17. (New section)  a.  The division may designate one of the
2    employment information centers it is authorized to establish and
3    maintain under section 16 of P.L.    , c.    (C.        ) (pending before
4    the Legislature as this bill) for the implementation of a
5    telecommunications hiring system through which longshoremen and
6    checkers may be hired and accept employment without any personal
7    appearance at the center.  The telecommunications hiring system
8    shall incorporate hiring and seniority agreements between the
9    employers of longshoremen and checkers and the labor
10    organizations representing longshoremen and checkers in the port of
11    New York district in this State, provided the agreements are not in
12    conflict with the provisions of P.L.    , c.    (C.        ) (pending
13    before the Legislature as this bill).
14    b.  The division shall permit employees of the management
15    organizations representing employers of longshoremen and
16    checkers in the port of New York district in this State, and of the
17    labor organizations representing longshoremen and checkers in the
18    port of New York district in this State, or of a joint board of these
19    management and labor organizations, to participate in the operation
20    of the telecommunications hiring system, if these employees are
21    registered by the division as "telecommunications system
22    controllers," with respect to the registration of checkers.  A person
23    shall not act as a "telecommunications system controller" unless
24    that person is registered.  An application for registration and a
25    registration made or issued may be denied, revoked, cancelled, or
26    suspended, as the case may be, only in the manner prescribed in
27    section 11 of P.L.    , c.    (C.        ) (pending before the Legislature
28    as this bill).    Participation in the operation of the
29    telecommunications hiring system shall be monitored by the
30    division.
31    c.  The records, documents, tapes, discs, and other data
32    compiled, collected or maintained by a management organization, a
33    labor organization, and a joint board of these management and labor
34    organizations pertaining to the telecommunications hiring system
35    shall be available for inspection, investigation, and duplication by
36    the division.
37
38    18. (New section)   In addition to the grounds elsewhere
39    established in P.L.    , c.    (C.        ) (pending before the Legislature
40    as this bill), the division may deny an application for a license or
41    registration for any of the following:
42    a.  Conviction by a court of the United States or any State or
43    territory thereof of coercion;
44    b.  Conviction by a court described in subsection a. of this
45    section, after having been previously convicted by that court of any
46    crime or of the offenses hereinafter set forth, or any of the
47    following offenses: assault, malicious injury to property, malicious

1    mischief, unlawful taking of a motor vehicle, corruption of
2    employees or possession of illegal betting number slips;

3        c.  Fraud, deceit or misrepresentation in connection with any
4    application or petition submitted to, or any interview, hearing or
5    proceeding conducted by the division or commission;

6        d.  Violation of any provision of P.L.  , c.  (C.    ) (pending
7    before the Legislature as this bill) or commission of any offense
8    thereunder;

9        e.  Refusal on the part of any applicant, or prospective licensee,
10    or of any member, officer or stockholder required by section 7 of
11    P.L.  , c.  (C.    ) (pending before the Legislature as this bill)
12    to sign or be identified in an application for a stevedore license, to
13    answer any material question or produce any material evidence in
14    connection with the person's application or any application made on
15    the person's behalf for a license or registration pursuant to section 7
16    of P.L.  , c.  (C.    ) (pending before the Legislature as this
17    bill);

18        f.  Association with a person who has been identified by a
19    federal, State, or local law enforcement agency as a member or
20    associate of an organized crime group, a terrorist group, or a career
21    offender cartel, or who is a career offender, under circumstances
22    where that association creates a reasonable belief that the
23    participation of the applicant in any activity required to be licensed
24    or registered under P.L.  , c.  (C.    ) (pending before the
25    Legislature as this bill) would be inimical to the purposes of
26    P.L.  , c.  (C.    ) (pending before the Legislature as this bill);
27    or

28        g.  Conviction of a racketeering activity or knowing association
29    with a person who has been convicted of a racketeering activity by
30    a court of the United States, or any State or territory thereof under
31    circumstances where that association creates a reasonable belief that
32    the participation of the applicant in any activity required to be
33    licensed or registered under P.L.  , c.  (C.    ) (pending before
34    the Legislature as this bill) would be inimical to the purposes of
35    P.L.  , c.  (C.    ) (pending before the Legislature as this bill).

36

37        19.  (New section)  In addition to the grounds elsewhere set
38    forth in P.L.  , c.  (C.    ) (pending before the Legislature as
39    this bill), any license or registration issued or made pursuant thereto
40    may be revoked or suspended for a period as the division deems in
41    the public interest or the licensee or registrant may be reprimanded,
42    for:

43        a.  Conviction of any crime or offense in relation to illegal
44    gambling, bookmaking, or similar crimes or offenses if the crime or
45    offense was committed at or on a pier or other waterfront terminal
46    or within 500 feet thereof;

47        b.  Willful authority of, or willful attempt to commit at or on a
48    waterfront terminal or adjacent highway, any act of physical injury

to any other person or of willful damage to or misappropriation of
any other person's property, unless justified or excused by law;

c.   Receipt or solicitation of anything of value from any person
other than a licensee's or registrant's employer as consideration for
the selection or retention for employment of a licensee or registrant;

d.   Coercion of a licensee or registrant by threat of
discrimination or violence or economic reprisal, to make purchases
from or to utilize the services of any person;

e.   Refusal to answer any material question or produce any
evidence lawfully required to be answered or produced at any
investigation, interview, hearing, or other proceeding conducted by
the division pursuant to section 14 of P.L.    , c.    (C.         )
(pending before the Legislature as this bill), or, if the refusal is
accompanied by a valid plea of privilege against self-incrimination,
refusal to obey an order to answer the question or produce any
evidence made by the division pursuant to section 14 of P.L.    , c.
(C.         ) (pending before the Legislature as this bill); or

f.   Association with a person who has been identified by a
federal, State, or local law enforcement agency as a member or
associate of an organized crime group, a terrorist group, or a career
offender cartel, or who is a career offender, under circumstances
where that association creates a reasonable belief that the
participation of the licensee or registrant in any activity required to
be licensed or registered under P.L.    , c.    (C.         ) (pending
before the Legislature as this bill) would be inimical to the purposes
of P.L.    , c.    (C.         ) (pending before the Legislature as this
bill); or

g.   Conviction of a racketeering activity or knowing association
with a person who has been convicted of a racketeering activity by
a court of the United States, or any State, or territory thereof under
circumstances where that association creates a reasonable belief that
the participation of the licensee or registrant in any activity required
to be licensed or registered under P.L.    , c.    (C.         ) (pending
before the Legislature as this bill) would be inimical to the purposes
of P.L.    , c.    (C.         ) (pending before the Legislature as this
bill).

20.   (New section)  a.   In any investigation, interview, or other
proceeding conducted under oath by the division or any duly
authorized officer, employee, or agent thereof, if a person refuses to
answer a question or produce evidence of any other kind on the
ground that the person may be incriminated thereby, and
notwithstanding the refusal, an order is made upon 24 hours' prior
written notice to the Attorney General of the State of New Jersey,
and to the appropriate district attorney or prosecutor having an
official interest therein, by the Superintendent of the division or the
superintendent's designee, that the person answer the question or
produce the evidence, the person shall comply with the order.  If the

S3502 SWEENEY, SARLO
32

1    person complies with the order, and if, but for this section, would
2    have been privileged to withhold the answer given or the evidence
3    produced by the person, then immunity shall be conferred upon the
4    person, as provided for herein.  Immunity shall not be conferred
5    upon any person except in accordance with the provisions of this
6    section.  If, after compliance with the provisions of this section, a
7    person is ordered to answer a question or produce evidence of any
8    other kind and complies with the order, and it is thereafter
9    determined that the Attorney General or appropriate district
10   attorney or prosecutor having an official interest therein was not
11   notified, that failure or neglect shall not deprive that person of any
12   immunity otherwise properly conferred upon the person.  But the
13   person may nevertheless be prosecuted or subjected to penalty or
14   forfeiture for any perjury or contempt committed in answering, or
15   failing to answer, or in producing or failing to produce evidence, in
16   accordance with the order, and any answer given or evidence
17   produced shall be admissible against the person upon any criminal
18   proceeding concerning such perjury or contempt.
19      b.  If a person, in obedience to a subpoena directing the person
20   to attend and testify, is in this State or comes into this State from
21   the State of New York, the person shall not, while in this State
22   pursuant to such subpoena, be subject to arrest or the service of
23   process, civil or criminal, in connection with matters which arose
24   before the person's entrance into this State under the subpoena.
25
26      21.  (New section)  a.  The division may temporarily suspend a
27   temporary permit or a permanent license or a temporary or
28   permanent registration issued pursuant to the provisions of P.L.    ,
29   c.    (C.          ) (pending before the Legislature as this bill) until
30   further order of the division or final disposition of the underlying
31   case, only where the permittee, licensee, or registrant has been
32   indicted for, or otherwise charged with, a crime which is equivalent
33   to a crime of the third, second, or first degree in this State or only
34   where the permittee or licensee is a port watchman who is charged
35   by the division pursuant to section 13 of P.L.    , c.    (C.        )
36   (pending before the Legislature as this bill) with misappropriating
37   any other person's property at or on a pier or other waterfront
38   terminal.
39      b.  In the case of a permittee, licensee, or registrant who has
40   been indicted for, or otherwise charged with, a crime, the temporary
41   suspension shall terminate immediately upon acquittal or upon
42   dismissal of the criminal charge.  A person whose permit, license,
43   or registration has been temporarily suspended may, at any time,
44   demand that the division conduct a hearing as provided for in
45   section 14 of P.L.    , c.    (C.        ) (pending before the Legislature
46   as this bill).  Within 60 days of the demand, the division shall
47   commence the hearing and, within 30 days of receipt of the
48   administrative law judge's report and recommendation, the division

1    shall render a final determination thereon; provided, however, that
2    these time requirements, shall not apply for any period of delay
3    caused or requested by the permittee, licensee, or registrant.  Upon
4    failure of the division to commence a hearing or render a
5    determination within the time limits prescribed herein, the
6    temporary suspension of the permittee, licensee, or registrant shall
7    immediately terminate.  Notwithstanding any other provision of this
8    subsection, if a federal, State, or local law enforcement agency or
9    prosecutor's office shall request the suspension or deferment of any
10    hearing on the ground that the hearing would obstruct or prejudice
11    an investigation or prosecution, the division may in its discretion,
12    postpone or defer the hearing for a time certain or indefinitely.  Any
13    action by the division to postpone a hearing shall be subject to
14    immediate judicial review as provided in subsection b. of this
15    section.
16       c.  The division may, within its discretion, bar any permittee,
17    licensee, or registrant who has been suspended pursuant to the
18    provisions of subsection a. of this section, from any employment by
19    a licensed stevedore or a carrier of freight by water, if that
20    individual has been indicted or otherwise charged in any federal,
21    State, or territorial proceeding with any crime involving the
22    possession with intent to distribute, sale, or distribution of a
23    controlled dangerous substance or controlled dangerous substance
24    analog, racketeering, or theft from a pier or waterfront terminal.
25
26       22.  (New section)  The division is authorized to co-operate with
27    the commission, a similar authority, or other public entity of the
28    State of New York, to exchange information on any matter pertinent
29    to the purposes of P.L.    , c.    (C.        ) (pending before the
30    Legislature as this bill), and to enter into reciprocal agreements for
31    the accomplishment of those purposes, including, but not limited to,
32    the following objectives:
33       a.  To provide for the reciprocal recognition of any license
34    issued or registration made by the commission;
35       b.  To give reciprocal effect to any revocation, suspension, or
36    reprimand with respect to any licensee, and any reprimand or
37    removal from a longshoremen's register;
38       c.  To provide that any act or omission by a licensee or
39    registrant in either State which would be a basis for disciplinary
40    action against the licensee or registrant if it occurred in the state in
41    which the license was issued or the person registered shall be the
42    basis for disciplinary action in either state; and
43       d.  To provide that longshoremen registered in either state, who
44    perform work or who apply for work at an employment information
45    center within the other State shall be deemed to have performed
46    work or to have applied for work in the State in which they are
47    registered.

1   23.  (New section)  a.  The provisions of P.L.    , c.   (C.        )
2   (pending before the Legislature as this bill) are not designed and
3   shall not be construed to limit in any way any rights granted or
4   derived from any other statute or any rule of law for employees to
5   organize in labor organizations, to bargain collectively and to act in
6   any  other  way  individually,  collectively,  and  through  labor
7   organizations  or  other  representatives  of  their  own  choosing.
8   Without limiting the generality of the foregoing, nothing contained
9   in P.L.    , c.   (C.        ) (pending before the Legislature as this bill)
10   shall  be  construed  to  limit  in  any  way  the  right  of  employees  to
11   strike.
12      b.  The provisions of P.L.    , c.   (C.        ) (pending before the
13   Legislature as this bill) are not designed and shall not be construed
14   to limit in any way any rights of longshoremen, hiring agents, pier
15   superintendents, or port watchmen or their employers to bargain
16   collectively and agree upon any method for the selection of those
17   employees  by  way  of  seniority,  experience,  regular  gangs,  or
18   otherwise;  provided,  that  those  employees  shall  be  licensed  or
19   registered hereunder and longshoremen and port watchmen shall be
20   hired only through the employment information centers established
21   hereunder and that all other provisions of P.L.    , c.   (C.        )
22   (pending before the Legislature as this bill) be observed.
23
24   24.  (New section)  a.  Any officer or employee in the State,
25   county, or municipal civil service in either State who shall transfer
26   to service with the division may be given one or more leaves of
27   absence without pay and may, before the expiration of the leave or
28   leaves of absence, and without further examination or qualification,
29   return to the person's former position or be certified by the
30   appropriate civil service agency for retransfer to a comparable
31   position in the State, county, or municipal civil service if a
32   comparable position is then available.
33      b.  The division may, by agreement with any federal agency
34   from which any officer or employee may transfer to service with the
35   division  to  undertake  any  of  the  duties  or  responsibilities
36   established pursuant to P.L.    , c.   (C.        ) (pending before the
37   Legislature as this bill), make similar provision for the retransfer of
38   the officer or employee to that federal agency.
39      c.  Notwithstanding  the  provisions  of  any  other  law,  rule,  or
40   regulation,  any  officer  or  employee  in  the  State,  county,  or
41   municipal service in either State who shall transfer to service with
42   the division and who is a member of any existing State, county, or
43   municipal pension or retirement system in New Jersey or New
44   York, shall continue to have all rights, privileges, obligations, and
45   status with respect to that fund, system, or systems as if the person
46   had continued in State, county, or municipal office or employment,
47   but during the period of service as a member, officer, or employee
48   of the division, all contributions to any pension or retirement fund

1    or system to be paid by the employer on account of the member,
2    officer, or employee, shall be paid by the State Treasurer.  The
3    division may, by agreement with the appropriate federal agency,
4    make similar provisions relating to continuance of retirement
5    system membership for any federal officer or employee so
6    transferred.
7
8       25.  (New section)  a.  The division shall annually adopt a
9    budget of its expenses for each year for the purposes of its duties
10   and responsibilities under P.L.    , c.   (C.        ) (pending before the
11   Legislature as this bill).  Each budget shall be submitted to the
12   Governor and the budget shall be adjusted accordingly.
13      b.  After taking into account funds as may be available to the
14   division from reserves, federal grants or otherwise, the balance of
15   the division's budgeted expenses for the performance of its
16   functions and duties under P.L.    , c.   (C.        ) (pending before
17   the Legislature as this bill) shall be assessed upon employers of
18   persons registered or licensed pursuant to P.L.    , c.   (C.        )
19   (pending before the Legislature as this bill).  Each employer shall
20   pay to the State Treasurer, for placement within the General Fund,
21   an assessment computed upon the gross payroll payments made by
22   that employer to longshoremen, pier superintendents, hiring agents,
23   and port watchmen for work or labor performed within the port of
24   New York district in this State, at a rate, not in excess of two
25   percent, computed by the division in the following manner: the
26   division shall annually estimate the gross payroll payments to be
27   made by employers subject to assessment and shall compute a rate
28   thereon which will yield revenues sufficient to finance the division's
29   budget for the performance of those functions and duties under
30   P.L.    , c.   (C.        ) (pending before the Legislature as this bill)
31   for each year.  That budget may include a reasonable amount for a
32   reserve, but the amount shall not exceed 10 percent of the total of
33   all other items of expenditure contained therein.  The reserve shall
34   be used for the stabilization of annual assessments, the payment of
35   operating deficits, and for the repayment of advances made by the
36   State, if any.
37      c.  The amount required to balance the division's budgeted
38   expenses for the performance of its functions and duties under
39   P.L.    , c.   (C.        ) (pending before the Legislature as this bill),
40   in excess of the estimated yield of the maximum assessment, shall
41   be certified by the division, with the approval of the Governor, in
42   proportion to the gross annual wage payments made to
43   longshoremen for work within the port of New York district in this
44   State. The Legislature shall annually appropriate to the division the
45   amount so certified.
46      d.  The division may provide by regulation for the collection
47   and auditing of assessments.  In addition to any other sanction
48   provided by law, the division may revoke or suspend any license

1  held by any person under P.L.   , c.   (C.       ) (pending before the
2  Legislature as this bill), or the person's privilege of employing
3  persons registered or licensed hereunder, for non-payment of any
4  assessment when due.
5    e.  The assessment hereunder shall be in lieu of any other
6  charge for the issuance of licenses to stevedores, pier
7  superintendents, hiring agents, and port watchmen or for the
8  registration of longshoremen or use of an employment information
9  center.  The division shall establish reasonable procedures for the
10  consideration of protests by affected employees concerning the
11  estimates and computation of the rate of assessment.
12
13    26.  (New section)  a.  (1) Every person subject to the payment
14  of any assessment under the provisions of section 25 of P.L.   , c.
15  (C.       ) (pending before the Legislature as this bill) shall file on or
16  before the 15th day of the first month of each calendar quarter-year
17  a separate return, together with the payment of the assessment due,
18  for the preceding calendar quarter-year during which any payroll
19  payments were made to longshoremen, pier superintendents, hiring
20  agents, or port watchmen for work performed by those employees
21  within the port of New York district in this State.  Returns covering
22  the amount of assessment payable shall be filed with the division on
23  forms to be furnished for that purpose and shall contain data,
24  information, or matter as the division may require to be included
25  therein.  The division may grant a reasonable extension of time for
26  filing returns, or for the payment of assessment, whenever good
27  cause exists.  Every return shall have annexed thereto a certification
28  to the effect that the statements contained therein are true.
29    (2) Every person subject to the payment of assessment
30  hereunder shall keep an accurate record of that person's
31  employment of longshoremen, pier superintendents, hiring agents,
32  or port watchmen, which shall show the amount of compensation
33  paid and other information as the division may require.  Those
34  records shall be preserved for a period of three years and be open
35  for inspection at reasonable times.  The division may consent to the
36  destruction of the records at any time after that period or may
37  require that they be kept longer, but not in excess of six years.
38    (3) (a) The division shall audit and determine the amount of
39  assessment due from the return filed and such other information as
40  is available to it.  Whenever a deficiency in payment of the
41  assessment is determined, the division shall give notice of the
42  determination to the person liable therefor.  The determination shall
43  finally and conclusively fix the amount due, unless the person
44  against whom the assessment is assessed shall, within 30 days after
45  the giving of notice of the determination, apply in writing to the
46  division for a hearing, or unless the division on its own motion shall
47  reduce the assessment.  After the hearing, the division shall give
48  notice of its decision to the person liable therefor.  A determination

1 of the division under this section shall be subject to judicial review,
2 if application for that review is made within 30 days after the giving
3 of notice of the decision.   Any determination under this section
4 shall be made within five years from the time the return was filed
5 and if no return was filed, the determination may be made at any
6 time.
7  (b)  Any notice authorized or required under this section may be
8 given by mailing the notice to the person for whom it is intended at
9 the last address that the person shall have given to the division, or
10 in the last return filed with the division under this section, or, if a
11 return has not been filed, then to an address as may be obtainable.
12 The mailing of the notice shall be presumptive evidence of the
13 receipt of it by the person to whom the notice is addressed.   Any
14 period of time, which is determined for the giving of notice shall
15 commence to run from the date of mailing of the notice.
16  (4)  Whenever any person shall fail to pay, within the time
17 limited herein, any assessment which the person is required to pay
18 to the division under the provisions of this section, the division may
19 enforce payment of the assessment by civil action for the amount of
20 the assessment with interest and penalties.
21  (5)  The employment by a nonresident of a longshoreman, or a
22 licensed pier superintendent, hiring agent, or port watchman in this
23 State or the designation by a nonresident of a longshoreman, pier
24 superintendent, hiring agent, or port watchman to perform work in
25 this State shall be deemed equivalent to an appointment by the
26 nonresident of the Secretary of State to be the nonresident's true
27 and lawful attorney upon whom may be served the process in any
28 action or proceeding against the nonresident growing out of any
29 liability for assessments, penalties, or interest, and a consent that
30 any process against the nonresident which is served shall be of the
31 same legal force and validity as if served personally within the State
32 and within the territorial jurisdiction of the court from which the
33 process issues.   Service of process within the State shall be made by
34 either:
35  (a)  personally delivering to and leaving with the Secretary of
36 State duplicate copies thereof at the office of the Department of
37 State, in which event the Secretary of State shall forthwith send by
38 registered mail one of the copies to the person at the last address
39 designated by the person to the division for any purpose under this
40 section or in the last return filed by the person under this section
41 with the division or as shown on the records of the division, or if no
42 return has been filed, at the person's last known office address
43 within or outside of the State; or
44  (b)  personally delivering to and leaving with the Secretary of
45 State a copy thereof at the office of the Department of State and by
46 delivering a copy thereof to the person, personally outside of the
47 State.   Proof of personal service outside of the State shall be filed
48 with the clerk of the court in which the process is pending within 30

1   days after that service and the service shall be deemed complete 10
2   days after proof thereof is filed.
3     (6) Whenever the division shall determine that any monies
4   received as assessments were paid in error, it may cause the same to
5   be refunded, provided an application therefor is filed with the
6   division within two years from the time the erroneous payment was
7   made.
8     (7) In addition to any other powers authorized hereunder, the
9   division shall have power to make reasonable rules and regulations,
10   pursuant to the provisions of the "Administrative Procedure Act,"
11   P.L.1968, c.410 (C.52:14B-1 et seq.), to effectuate the purposes of
12   this section.
13     (8) Any person who shall willfully fail to pay any assessment
14   due hereunder shall be assessed interest at a rate of one percent per
15   month on the amount due and unpaid and penalties of five percent
16   of the amount due for each 30 days or part thereof that the
17   assessment remains unpaid. The division may, for good cause
18   shown, abate all or part of that penalty.
19     (9) Any person who shall willfully furnish false or fraudulent
20   information or shall willfully fail to furnish pertinent information,
21   as required, with respect to the amount of assessment due, shall be
22   guilty of a disorderly persons offense.
23     (10) All funds of the division received as payment of any
24   assessment or penalty under this section shall be deposited with the
25   State Treasurer. The State Treasurer may require that all deposits
26   be secured by obligations of the United States or of the State of
27   New Jersey of a market value equal at all times to the amount of the
28   deposits, and all banks and trust companies are authorized to give
29   security for the deposits.
30     (11) The accounts, books, and records of the division related to
31   the purposes established pursuant to P.L.   , c.  (C.     ) (pending
32   before the Legislature as this bill), including its receipts,
33   disbursements, contracts, leases, investments, and any other matters
34   relating to its financial standing shall be examined and audited
35   annually by independent auditors to be retained for such purpose by
36   the division.
37     b. The division shall reimburse the State Treasurer for any
38   funds advanced to the division exclusive of sums appropriated
39   pursuant to section 25 of P.L.   , c.  (C.     ) (pending before the
40   Legislature as this bill).
41
42     27. (New section) It shall be unlawful for any person to load or
43   unload waterborne freight onto or from vehicles other than railroad
44   cars at piers or at other waterfront terminals within the port of New
45   York district, for a fee or other compensation, other than the
46   following persons and their employees:
47     a. Carriers of freight by water, but only at piers at which their
48   vessels are berthed;

1    b.  Other carriers of freight, including but not limited to,
2 railroads and truckers, but only in connection with freight
3 transported or to be transported by those other carriers;
4    c.  Operators of piers or other waterfront terminals, including
5 railroads, truck terminal operators, warehousemen and other
6 persons, but only at piers or other waterfront terminals operated by
7 them;
8    d.  Shippers or consignees of freight, but only in connection
9 with freight shipped by the shipper or consigned to the consignee;
10 and
11    e.  Stevedores licensed under section 7 of P.L.   , c.   (C.    )
12 (pending before the Legislature as this bill), whether or not
13 waterborne freight has been or is to be transported by a carrier of
14 freight by water with which the stevedore shall have a contract of
15 the type prescribed by paragraph (4) of subsection e. of this section.
16    Nothing herein contained shall be deemed to permit any loading
17 or unloading of any waterborne freight at any place by any person
18 by means of any independent contractor, or any other agent other
19 than an employee, unless the independent contractor is a person
20 permitted by section 7 of P.L.   , c.   (C.    ) (pending before the
21 Legislature as this bill) to load or unload freight at a place in the
22 person's own right.
23
24    28.  (New section)  a.  A person shall not solicit, collect, or
25 receive any dues, assessments, levies, fines, or contributions, or
26 other charges within the State of New Jersey for or on behalf of any
27 labor organization, which represents employees registered or
28 licensed pursuant to the provisions of P.L.   , c.   (C.    )
29 (pending before the Legislature as this bill) in their capacities as
30 registered or licensed employees or which derives its charter from a
31 labor organization representing 100 or more of its registered or
32 licensed employees, if any officer, agent, or employee of the labor
33 organization for which dues, assessments, levies, fines, or
34 contributions, or other charges are solicited, collected, or received,
35 or of a welfare fund or trust administered partially or entirely by the
36 labor organization or by trustees or other persons designated by the
37 labor organization, has been convicted by a court of the United
38 States, or any State or territory thereof, of treason, murder,
39 manslaughter, or any felony, crime involving moral turpitude, or
40 any crime or offense enumerated subsection g. of section 6 of
41 P.L.   , c.   (C.    ) (pending before the Legislature as this bill),
42 unless that person has been subsequently pardoned therefor by the
43 Governor or other appropriate authority of the State in which the
44 conviction was had or has received a certificate of good conduct or
45 other relief from disabilities arising from the fact of conviction
46 from a parole board or similar authority.
47    b.  Any person who shall violate this section shall be guilty of a
48 petty disorderly persons offense.

S3502 SWEENEY, SARLO
40

1    c.  Any person who shall violate, aid and abet the violation, or
2  conspire or attempt to violate this subsection shall be guilty of a
3  petty disorderly persons offense.
4    d.  If upon application to the division by an employee who has
5  been convicted of a crime or offense specified in subsection b. of
6  this section, the authority, in its discretion, determines in an order
7  that it would not be contrary to the purposes and objectives of
8  P.L.  , c.  (C.    ) (pending before the Legislature as this bill)
9  for that employee to work in a particular employment for a labor
10  organization, welfare fund, or trust, the provisions of subsection b.
11  of this section shall not apply to the particular employment of the
12  employee with respect to that conviction or convictions as are
13  specified in the division's order.  This subsection is applicable only
14  to those employees, who for wages or salary, perform manual,
15  mechanical, or physical work of a routine or clerical nature at the
16  premises of the labor organization, welfare fund, or trust by which
17  they are employed.
18    e.  A person who has been convicted of a crime or offense
19  specified in subsection b. of this section shall not directly or
20  indirectly serve as an officer, agent, or employee of a labor
21  organization, welfare fund, or trust, unless the person has been
22  subsequently pardoned for that crime or offense by the Governor or
23  other appropriate authority of the State in which the conviction was
24  had or has received a certificate of good conduct or other relief
25  from disabilities arising from the fact of conviction from a parole
26  board or similar authority or has received an order of exception
27  from the division.  A person, including a labor organization, welfare
28  fund, or trust, shall not knowingly permit any other person to
29  assume or hold any office, agency, or employment in violation of
30  this section.
31    f.  The division may maintain a civil action against any person,
32  labor organization, welfare fund, or trust, or officers thereof to
33  compel compliance with this section, or to prevent any violations,
34  the aiding and abetting thereof, or any attempt or conspiracy to
35  violate this section, either by mandamus, injunction, or action or
36  proceeding in lieu of prerogative writ and upon a proper showing a
37  temporary restraining order or other appropriate temporary order
38  shall be granted ex parte and without bond pending final hearing
39  and determination.  Nothing in this subsection shall be construed to
40  modify, limit, or restrict in any way the provisions of subsection a.
41  of this section.
42
43    29.  (New section)  a.  Any person who, having been duly sworn
44  or affirmed as a witness in any investigation, interview, hearing or
45  other proceeding conducted by the division pursuant to section 15
46  of P.L.  , c.  (C.    ) (pending before the Legislature as this
47  bill), shall willfully give false testimony shall be guilty of a
48  disorderly persons offense.

1      b.  The division may maintain a civil action on behalf of the
2    State against any person who violates or attempts or conspires to
3    violate P.L.    , c.    (C.        ) (pending before the Legislature as this
4    bill) or who fails, omits, or neglects to obey, observe, or comply
5    with any order or direction of the division, to recover a judgment
6    for a money penalty not exceeding $500 for each and every offense.
7    Every violation of any provision of P.L.    , c.    (C.        ) (pending
8    before the Legislature as this bill), or any division order or
9    direction, shall be a separate and distinct offense, and, in case of a
10    continuing violation, every day's continuance shall be and be
11    deemed to be a separate and distinct offense.  Any civil action may
12    be compromised or discontinued on application of the division upon
13    the terms as the court may approve and a judgment may be rendered
14    for an amount less than the amount demanded in the complaint as
15    justice may require.
16      c.  The division may maintain a civil action against any person
17    to compel compliance with any of the provisions of P.L.      , c.
18    (C.      ) (pending before the Legislature as this bill), or to prevent
19    violations, attempts, or conspiracies to violate any provisions of
20    P.L.    , c.    (C.        ) (pending before the Legislature as this bill),
21    or interference, attempts, or conspiracies to interfere with or impede
22    the enforcement of any provisions of P.L.    , c.    (C.        ) (pending
23    before the Legislature as this bill) or the exercise or performance of
24    any power or duty thereunder, either by mandamus, injunction, or
25    action or proceeding in lieu of prerogative writ.
26      d.  Any person who shall violate any of the provisions of
27    P.L.    , c.    (C.        ) (pending before the Legislature as this bill),
28    for which no other penalty is prescribed, shall be guilty of a petty
29    disorderly persons offense.
30      e.  Any person who shall, without a satisfactory explanation,
31    loiter upon any vessel, dock, wharf, pier, bulkhead, terminal,
32    warehouse, or other waterfront facility or within 500 feet thereof in
33    that portion of the port of New York district in this State, shall be
34    guilty of a petty disorderly persons offense.
35      f.  Any person who, without justification or excuse in law,
36    directly or indirectly, intimidates or inflicts any injury, damage,
37    harm, loss, or economic reprisal upon any person licensed or
38    registered by the division, or any other person, or attempts,
39    conspires, or threatens so to do, in order to interfere with, impede,
40    or influence the licensed or registered person in the performance or
41    discharge of the licensed or registered person's duties or obligations
42    shall be punishable as provided in this section.
43
44      30.  (New section)  a.  The failure of any witness, when duly
45    subpoenaed to attend, give testimony, or produce other evidence in
46    connection with any matter arising under the provisions of
47    P.L.    , c.    (C.        ) (pending before the Legislature as this bill),
48    whether or not at a hearing, shall be punishable by the Superior

**S3502** SWEENEY, SARLO

42

1   Court in New Jersey in the same manner as that failure is
2   punishable by the court in a case therein pending.
3      b.   Any person who, having been sworn or affirmed as a witness
4   in any hearing pursuant to subsection a. of this section, shall
5   willfully give false testimony or who shall willfully make or file
6   any false or fraudulent report or statement required by P.L.    , c.
7   (C.        ) (pending before the Legislature as this bill) to be made or
8   filed under oath, shall be guilty of a disorderly persons offense.
9      c.   Any person who violates or attempts or conspires to violate
10  any other provision of P.L.    , c.   (C.        ) (pending before the
11  Legislature as this bill) shall be punishable as may be provided by
12  section 28 of P.L.    , c.   (C.        ) (pending before the Legislature
13  as this bill).
14     d.   Any person who interferes with or impedes the orderly
15  registration of longshoremen pursuant to P.L.    , c.   (C.        )
16  (pending before the Legislature as this bill) or who conspires to or
17  attempts to interfere with or impede such registration shall be
18  punishable as may be provided by section 28 of P.L.    , c.
19  (C.        ) (pending before the Legislature as this bill).
20     e.   Any person who, directly or indirectly, inflicts or threatens
21  to inflict any injury, damage, harm, or loss or in any other manner
22  practices intimidation upon or against any person in order to induce
23  or compel such person or any other person to refrain from
24  registering pursuant to section 8 of P.L.    , c.   (C.        ) (pending
25  before the Legislature as this bill) shall be punishable as may be
26  provided by section 28 of P.L.    , c.   (C.        ) (pending before
27  the Legislature as this bill).
28     f.   In any prosecution under this section, it shall be sufficient to
29  prove only a single act, or a single holding out or attempt,
30  prohibited by law, without having to prove a general course of
31  conduct, in order to prove a violation.
32
33     31.  (New section)   As of the transfer date, the waterfront
34  commission compact, entered into by the State of New Jersey
35  pursuant to its agreement thereto under P.L.1953, c.202 (C.32:23-1
36  et seq.) and by the State of New York pursuant to its agreement
37  thereto under P.L.1953, c.882 (NY Unconsol. Ch.307, s.1), as
38  amended and supplemented, the airport commission compact,
39  entered into by the State of New Jersey pursuant to its agreement
40  thereto under P.L.1970, c.58 (C.32:23-150 et seq.) and by the State
41  of New York pursuant to its agreement thereto under P.L.1970,
42  c.951 (NY Unconsol. Ch.307, s.10), and the commission, are
43  dissolved.
44
45     32.  R.S.52:14-7 is amended to read as follows:
46     52:14-7.  a.   Every person holding an office, employment, or
47  position

**S3502** SWEENEY, SARLO
43

1    (1) in the Executive, Legislative, or Judicial Branch of this
2  State, or
3    (2) with an authority, board, body, agency, commission, or
4  instrumentality of the State including any State college, university,
5  or other higher educational institution, and, to the extent consistent
6  with law, any interstate agency to which New Jersey is a party, or
7    (3) with a county, municipality, or other political subdivision of
8  the State or an authority, board, body, agency, district, commission,
9  or instrumentality of the county, municipality, or subdivision, or
10    (4) with a school district or an authority, board, body, agency,
11  commission, or instrumentality of the district,
12  shall have his or her principal residence in this State and shall
13  execute such office, employment, or position.
14    This residency requirement shall not apply to any person<u>: (a)</u>
15  who is employed on a temporary or per-semester basis as a visiting
16  professor, teacher, lecturer, or researcher by any State college,
17  university, or other higher educational institution, or county or
18  community college, or in a full or part-time position as a member of
19  the faculty, the research staff, or the administrative staff by any
20  State college, university, or other higher educational institution, or
21  county or community college, that the college, university, or
22  institution has included in the report required to be filed pursuant to
23  this subsection [, or]<u>: (b)</u> who is employed full-time by the State
24  who serves in an office, employment, or position that requires the
25  person to spend the majority of [his or her] <u>the person's</u> working
26  hours in a location outside of this State<u>; or (c) an officer of the</u>
27  <u>waterfront commission of New York harbor, employed by the</u>
28  <u>commission on the effective date of P.L.    , c.    (C.        ) (pending</u>
29  <u>before the Legislature as this bill), who seeks to be transferred to</u>
30  <u>the Division of State Police in the Department of Law and Public</u>
31  <u>Safety pursuant to section 4 of P.L.    , c.    (C.        ) (pending</u>
32  <u>before the Legislature as this bill)</u>.
33    For the purposes of this subsection, a person may have at most
34  one principal residence, and the state of a person's principal
35  residence means the state (1) where the person spends the majority
36  of [his or her] <u>the person's</u> nonworking time, and (2) which is most
37  clearly the center of [his or her] <u>the person's</u> domestic life, and (3)
38  which is designated as [his or her] <u>the person's</u> legal address and
39  legal residence for voting.  The fact that a person is domiciled in
40  this State shall not by itself satisfy the requirement of principal
41  residency hereunder.
42    A person, regardless of the office, employment, or position, who
43  holds an office, employment, or position in this State on the
44  effective date of P.L.2011, c.70 but does not have [his or her]
45  principal residence in this State on that effective date shall not be
46  subject to the residency requirement of this subsection while the

S3502 SWEENEY, SARLO
44

1   person continues to hold office, employment, or position without a
2   break in public service of greater than seven days.
3        Any person may request an exemption from the provisions of
4   this subsection on the basis of critical need or hardship from a five-
5   member committee hereby established to consider applications for
6   [such] exemptions.  The committee shall be composed of three
7   persons appointed by the Governor, a person appointed by the
8   Speaker of the General Assembly, and a person appointed by the
9   President of the Senate, each of whom shall serve at the pleasure of
10  the person making the appointment and shall have a term not to
11  exceed five years.  A vacancy on the committee shall be filled in the
12  same manner as the original appointment was made.  The Governor
13  shall make provision to provide such clerical, secretarial, and
14  administrative support to the committee as may be necessary for it
15  to conduct its responsibilities pursuant to this subsection.
16       The decision on whether to approve an application from any
17  person shall be made by a majority vote of the members of the
18  committee, and those voting in the affirmative shall so sign the
19  approved application.  If the committee fails to act on an application
20  within 30 days after the receipt thereof, no exemption shall be
21  granted and the residency requirement of this subsection shall be
22  operative.  The head of a principal department of the Executive
23  Branch of the State government, a Justice of the Supreme Court,
24  judge of the Superior Court, and judge of any inferior court
25  established under the laws of this State shall not be eligible to
26  request from the committee an exemption from the provisions of
27  this subsection.
28       The exemption provided in this subsection for certain persons
29  employed by a State college, university, or other higher educational
30  institution, or a county or community college, other than those
31  employed on a temporary or per-semester basis as a visiting
32  professor, teacher, lecturer, or researcher, shall apply only to those
33  persons holding positions that the college, university, or institution
34  has included in a report of those full or part-time positions as a
35  member of the faculty, the research staff, or the administrative staff
36  requiring special expertise or extraordinary qualifications in an
37  academic, scientific, technical, professional, or medical field or in
38  administration, that, if not exempt from the residency requirement,
39  would seriously impede the ability of the college, university, or
40  institution to compete successfully with similar colleges,
41  universities, or institutions in other states.  The report shall be
42  compiled annually and shall also contain the reasons why the
43  positions were selected for inclusion in the report.  The report shall
44  be compiled and filed within 60 days following the effective date of
45  P.L.2011, c.70.  The report shall be reviewed, revised as necessary,
46  and filed by January 1 of each year thereafter.  Each report shall be
47  filed with the Governor and, pursuant to section 2 of P.L.1991,
48  c.164 (C.52:14-19.1), with the Legislature, and a report may be

1  revised at any time by filing an amendment to the report with the
2  Governor and Legislature.
3       As used in this section, "school district" means any local or
4  regional school district established pursuant to chapter 8 or chapter
5  13 of Title 18A of the New Jersey Statutes and any jointure
6  commission, county vocational school, county special services
7  district, educational services commission, educational research and
8  demonstration center, environmental education center, and
9  educational information and resource center.
10      b.  If any person holding any office, employment, or other
11 position in this State shall attempt to let, farm out, or transfer
12 [such] office, employment, or position or any part thereof to any
13 person, [he] the person shall forfeit the sum of [fifteen hundred
14 dollars ($1,500.00)] $1,500, to be recovered with costs by any
15 person who shall sue for the same, one-half to the prosecutor and
16 the other half to the [treasurer] State Treasurer for the use of the
17 State.
18      c.  No person shall be appointed to or hold any position in this
19 State who has not the requisite qualifications for personally
20 performing the duties of such position in cases where scientific
21 engineering skill is necessary to the performance of the duties
22 thereof.
23      d.  Any person holding or attempting to hold an `office,
24 employment, or position in violation of this section shall be
25 considered as illegally holding or attempting to hold the same;
26 provided that a person holding an office, employment, or position in
27 this State shall have one year from the time of taking the office,
28 employment, or position to satisfy the requirement of principal
29 residency, and if thereafter [such] the person fails to satisfy the
30 requirement of principal residency as defined herein with respect to
31 any 365-day period, that person shall be deemed unqualified for
32 holding the office, employment, or position.  The Superior Court
33 shall, in a civil action in lieu of prerogative writ, give judgment of
34 ouster against [such] the person, upon the complaint of any officer
35 or citizen of the State, provided that any [such] complaint shall be
36 brought within one year of the alleged 365-day period of failure to
37 have [his or her] the person's principal residence in this State.
38 (cf: P.L.2011, c.70, s.2)
39
40      33.  The following are repealed:
41      P.L.1953, c.202 (C.32:23-1 et seq.);
42      P.L.1991, c.248 (C.32:23-23.1);
43      P.L.1985, c.32 (C.32:23-43.1 and 32:23-44.1);
44      Section 2 of P.L.1956, c.20 (C.32:23-75.1);
45      P.L.1954, c.3 (C.32:23-77.1 et seq.);
46      Sections 4 and 5 of P.L.1962, c.5 (C.32:23-80.1 and 32:23-80.2);
47      P.L.1954, c.14 (C.32:23-85 et seq.);

**S3502** SWEENEY, SARLO
46

1   P.L.1956, c.19 (C.32:23-99 et seq.);
2   Sections 6, 8, 9, and 10 of P.L.1956, c.194 (C.32:23-105 through
3   32:23-108);
4   P.L.1990, c.59 (C.32:23-105.1 through 32:23-105.3);
5   Sections 2 and 6 through 9 of P.L.1962, c.5 (C.32:23-109
6   through 32:23-113);
7   Sections 2 through 5 of P.L.1966, c.18 (C.32:23-114 through
8   32:23-117);
9   P.L.1976, c.102 (C.32:23-118 through 32:23-121); and
10  Sections 4 through 17 and section 19 of P.L.1970, c.58 (C.32:23-
11  150 through 32:23-225).
12
13  34.  This act shall take effect immediately, but sections 3 through
14  32 shall be inoperative until the transfer date has occurred pursuant
15  to section 31 of P.L.    , c.   (C.          ) (pending before the
16  Legislature as this bill).
17
18
19                       STATEMENT
20
21  This bill directs the Governor, on behalf of the State of New
22  Jersey, to notify the Congress of the United States, the Governor of
23  the State of New York, and the Waterfront Commission of New
24  York Harbor of the State of New Jersey's intention to withdraw
25  from the compact creating the commission, and repeals the compact
26  establishing the commission and related statutes.
27  The bill provides for the assumption of the commission's
28  functions and duties within the State of New Jersey by the New
29  Jersey State Police in order to investigate, deter, and combat
30  criminal activity and influence in the New Jersey portion of the port
31  of New York.  These duties include: processing applications filed
32  by individuals and firms required to be registered or licensed to
33  undertake port-related employment; supervising the hiring of
34  longshoremen, checkers, and pier guards in the port; and making
35  employment information available to these dock workers.  The State
36  Police are responsible for screening, registering, and licensing
37  individuals who apply to work at the dock.  In doing so, the State
38  Police are authorized to deny or revoke the registration or licenses
39  of those who involve themselves in criminal activity.  Once the
40  freight is removed from a marine terminal in the port, the bill
41  provides that the State Police no longer have jurisdiction with
42  regard to the screening, registering, and licensing of consignees of
43  waterborne freight.
44  Under legislation enacted by New Jersey and New York in 1953
45  and consented to by Congress that same year, the two states entered
46  into a compact establishing the commission.  The commission is
47  empowered under the compact to regulate the employment of
48  individuals, and the engagement of businesses, in the provision of

1    various cargo handling services within the port.  Notably, the
2    compact provides for the licensure of those acting within the district
3    as pier superintendents, hiring agents, stevedores, and port
4    watchmen, and for the registration of longshoremen.      The
5    commission is authorized to establish and maintain within the port
6    "employment information centers" through which longshoremen
7    and port watchmen are hired in order to work in the port.  The
8    compact provides that a conviction for certain offenses is grounds
9    for disqualification from receiving or retaining status as a licensee
10   or registrant under the compact.  The compact authorizes the
11   commission to enforce its regulations through investigations,
12   hearings, and civil penalties, and to fund its operations through an
13   assessment upon the employers of those subject to its regulation;
14   the assessment may not exceed two percent of the estimated gross
15   payroll of those employers.  All of these duties and responsibilities
16   under the compact are to be transferred to the State Police and the
17   revenues from the assessment are to be deposited in the State's
18   General Fund instead of with the commission.
19       Further, in 1970, both New Jersey and New York enacted
20   legislation to supplement the 1953 compact. Under that legislation,
21   the commission's authority to regulate cargo handling was extended
22   to the licensure of those serving at airports within the two states as
23   airfreightmen, airfreightman supervisors, air freight terminal
24   operators, or air freight truck carriers.  Like the earlier legislation,
25   the 1970 legislation confers on the commission the power to enforce
26   its regulation of airport cargo handling, and to fund regulatory and
27   improvement activity through a payroll-based assessment on
28   employers.   This supplementary compact has not received
29   Congressional consent, and has not been implemented.  This bill
30   repeals the 1970 legislation.

# EXHIBIT D

# ASSEMBLY APPROPRIATIONS COMMITTEE

## STATEMENT TO

## SENATE, No. 3502

# STATE OF NEW JERSEY

### DATED: DECEMBER 18, 2017

The Assembly Appropriations Committee reports favorably Senate Bill No. 3502.

This bill directs the Governor, on behalf of the State of New Jersey, to notify the Congress of the United States, the Governor of the State of New York, and the Waterfront Commission of New York Harbor of the State of New Jersey's intention to withdraw from the compact creating the commission, and repeals the compact establishing the commission and related statutes.

The bill provides for the assumption of the commission's functions and duties within the State of New Jersey by the New Jersey State Police to investigate, deter, and combat criminal activity and influence in the New Jersey portion of the port of New York. These duties include: processing applications filed by individuals and firms required to be registered or licensed to undertake port-related employment; supervising the hiring of longshoremen, checkers, and pier guards in the port; and making employment information available to these dock workers. The bill makes the State Police responsible for screening, registering, and licensing individuals who apply to work at the dock. In doing so, the State Police are authorized to deny or revoke the registration or licenses of those who involve themselves in criminal activity. Once the freight is removed from a marine terminal in the port, the bill provides that the State Police no longer have jurisdiction with regard to the screening, registering, and licensing of consignees of waterborne freight.

Under legislation enacted by New Jersey and New York in 1953 and consented to by Congress that same year, the two states entered into a compact establishing the commission. The commission is empowered under the compact to regulate the employment of individuals, and the engagement of businesses, in the provision of various cargo handling services within the port. Notably, the compact provides for the licensure of those acting within the district as pier superintendents, hiring agents, stevedores, and port watchmen, and for the registration of longshoremen. The commission is authorized to establish and maintain within the port "employment information centers" through which longshoremen and port watchmen are hired to work in the port. The compact provides that a conviction for certain offenses is grounds for disqualification from receiving or retaining status as a licensee or registrant under the compact. The compact

2

authorizes the commission to enforce its regulations through investigations, hearings, and civil penalties, and to fund its operations through an assessment upon the employers of those subject to its regulation; the assessment may not exceed two percent of the estimated gross payroll of those employers. All of these duties and responsibilities under the compact are to be transferred to the State Police and the revenues from the assessment are to be deposited in the State's General Fund instead of with the commission.

In 1970, both New Jersey and New York enacted legislation to supplement the 1953 compact. Under that legislation, the commission's authority to regulate cargo handling was extended to the licensure of those serving at airports within the two states as airfreightmen, airfreightman supervisors, air freight terminal operators, or air freight truck carriers. Like the earlier legislation, the 1970 legislation confers on the commission the power to enforce its regulation of airport cargo handling, and to fund regulatory and improvement activity through a payroll-based assessment on employers. This supplementary compact has not received Congressional consent, and has not been implemented. This bill repeals the 1970 legislation.

As reported, this bill is identical to Assembly Bill No. 2179, as also reported by the committee.


FISCAL IMPACT:

The Office of Legislative Services (OLS) estimates that the bill will initially result in about $12.6 million in State costs, and approximately $10.4 million in State revenue which will increase annually with growth in traffic volume.

With respect to State costs, the OLS notes that the commission's annual report for 2012-2013 identified $12.7 million in expenditures for FY 2013, with $10.2 million being the "New Jersey" share, based on an assumed 80 percent of commission activity taking place in New Jersey, and representing the commission activity that would subsequently fall to the State Police. The State Police is expected to experience increased costs in integrating the operations and legacy commitments of the commission, resulting in an initial State cost of approximately $12.6 million, which includes some non-recurring costs related to the transfer.

In terms of State revenues, the OLS notes that the commission is funded through an assessment on the wages of persons utilized in the handling of waterborne cargo at ports under commission jurisdiction. Assessments generated $13.2 million in revenue in fiscal year 2013, with 80 percent of commission activity attributed to ports located in the State of New Jersey, primarily Port Newark, Port Elizabeth, and Port Jersey. The New Jersey State portion of revenues from the

3

assessments represents an additional $10.6 million in State revenue, which is likely to increase with economic growth at the port.  The OLS has adjusted this amount to account for the contraction in jurisdiction over cargo handling.

**EXHIBIT E**

SENATE BUDGET AND APPROPRIATIONS COMMITTEE

STATEMENT TO

SENATE, No. 3502

# STATE OF NEW JERSEY

DATED: NOVEMBER 20, 2017

The Senate Budget and Appropriations Committee reports favorably Senate Bill No. 3502.

This bill directs the Governor, on behalf of the State of New Jersey, to notify the Congress of the United States, the Governor of the State of New York, and the Waterfront Commission of New York Harbor of the State of New Jersey's intention to withdraw from the compact creating the commission, and repeals the compact establishing the commission and related statutes.

The bill provides for the assumption of the commission's functions and duties within the State of New Jersey by the New Jersey State Police to investigate, deter, and combat criminal activity and influence in the New Jersey portion of the port of New York.  These duties include: processing applications filed by individuals and firms required to be registered or licensed to undertake port-related employment; supervising the hiring of longshoremen, checkers, and pier guards in the port; and making employment information available to these dock workers.  The State Police are responsible for screening, registering, and licensing individuals who apply to work at the dock.  In doing so, the State Police are authorized to deny or revoke the registration or licenses of those who involve themselves in criminal activity.  Once the freight is removed from a marine terminal in the port, the bill provides that the State Police no longer have jurisdiction with regard to the screening, registering, and licensing of consignees of waterborne freight.

Under legislation enacted by New Jersey and New York in 1953 and consented to by Congress that same year, the two states entered into a compact establishing the commission.  The commission is empowered under the compact to regulate the employment of individuals, and the engagement of businesses, in the provision of various cargo handling services within the port.  Notably, the compact provides for the licensure of those acting within the district as pier superintendents, hiring agents, stevedores, and port watchmen, and for the registration of longshoremen.  The commission is authorized to establish and maintain within the port "employment information centers" through which longshoremen and port watchmen are hired to work in the port.  The compact provides that a conviction for certain offenses is grounds for disqualification from receiving or retaining status as a licensee or registrant under the compact.  The compact authorizes the commission to enforce its regulations through

2

investigations, hearings, and civil penalties, and to fund its operations through an assessment upon the employers of those subject to its regulation; the assessment may not exceed two percent of the estimated gross payroll of those employers. All of these duties and responsibilities under the compact are to be transferred to the State Police in accordance with the bill, and the revenues from the assessment are to be deposited in the State's General Fund instead of with the commission.

Further, in 1970, both New Jersey and New York enacted legislation to supplement the 1953 compact. Under that legislation, the commission's authority to regulate cargo handling was extended to the licensure of those serving at airports within the two states as airfreightmen, airfreightman supervisors, air freight terminal operators, or air freight truck carriers. Like the earlier legislation, the 1970 legislation confers on the commission the power to enforce its regulation of airport cargo handling, and to fund regulatory and improvement activity through a payroll-based assessment on employers. This supplementary compact has not received Congressional consent, and has not been implemented. This bill repeals the 1970 legislation.

FISCAL IMPACT:

The Office of Legislative Services (OLS) estimates that the bill will initially result in about $12.6 million in State costs, and approximately $10.4 million in State revenue which will increase annually with growth in traffic volume.

With respect to State costs, the OLS notes that the commission's annual report for 2012-2013 identified $12.7 million in expenditures for FY 2013, with $10.2 million being the "New Jersey" share, based on an assumed 80 percent of commission activity taking place in New Jersey, and representing the commission activity that would subsequently fall to the State Police. The State Police is expected to experience increased costs in integrating the operations and legacy commitments of the commission, resulting in an initial State cost of approximately $12.6 million, which includes some non-recurring costs related to the transfer.

In terms of State revenues, the OLS notes that the commission is funded through an assessment on the wages of persons utilized in the handling of waterborne cargo at ports under commission jurisdiction. Assessments generated $13.2 million in revenue in fiscal year 2013, with 80 percent of commission activity attributed to ports located in the State of New Jersey, primarily Port Newark, Port Elizabeth, and Port Jersey. The New Jersey State portion of revenues from the assessments represents an additional $10.6 million in State revenue, which is likely to increase with economic growth at the port. The OLS has adjusted this amount to account for the contraction in jurisdiction over cargo handling.