## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WATERFRONT COMMISSION OF NEW YORK HARBOR,<br><br>                Plaintiff,<br><br>      v.<br><br>PHILIP MURPHY, in his official capacity as Governor of New Jersey,<br><br>              Defendant,<br><br>     and<br><br>STEPHEN M. SWEENEY in his official capacity as President of the New Jersey Senate; CRAIG J. COUGHLIN, in his official capacity as Speaker of the New Jersey General Assembly; the NEW JERSEY SENATE; and the NEW JERSEY GENERAL ASSEMBLY,<br><br>              Intervenor Defendants. | Civil Action No. 2:18-cv-00650 (SDW)(LDW) |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**PROSKAUER ROSE LLP**

Lawrence R. Sandak
One Newark Center
Newark, NJ 07102
973-274-3200
lsandak@proskauer.com

Michael A. Cardozo*
Jordan B. Leader*
Eleven Times Square
New York, NY 10036
212-969-3000
mcardozo@proskauer.com
jleader@proskauer.com

John E. Roberts*
One International Place
Boston, MA 02110
617-526-9813
jroberts@proskauer.com

\* Admitted *pro hac vice*

*Attorneys for Plaintiff*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND ....................................................................................3

    A.    The Waterfront Commission Compact ....................................................3

    B.    New Jersey's Previous Attempt to Unilaterally Withdraw from the Compact .........5

    C.    New Jersey's Current Attempt to Unilaterally Withdraw from the Compact ...........6

    D.    Procedural History..................................................................................7

ARGUMENT .......................................................................................................10

I.    As a Matter of Law, New Jersey Cannot Unilaterally Withdraw from the Waterfront Compact, as this Court Has Already Determined. ...........................................12

    A.    The Court's Prior Ruling that Chapter 324 Violates the Compact Is Correct as a Matter of Law..............................................................................12

    B.    Discovery Is Unwarranted Because the Compact Is Unambiguous.........................16

II.    Defendants' Affirmative Defenses Fail as a Matter of Law, as the Court Previously Held.................................................................................................19

CONCLUSION....................................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alabama v. North Carolina*,
   560 U.S. 330 (2010)............................................................................................13, 15

*Alcorn v. Wolfe*,
   827 F. Supp. 47 (D.D.C. 1993) ...........................................................................13

*Alpha Painting & Constr. Co. v. Del. River Port Auth.*,
   No. 16-cv-5141, 2018 WL 3085208 (D.N.J. June 22, 2018).................................14

*Bunk v. Port Auth. of N.Y. & N.J.*,
   144 N.J. 176 (1996) ...............................................................................................14

*De Veau v. Braisted*,
   363 U.S. 144 (1960).................................................................................................3

*Hay Grp., Inc. v. E.B.S. Acquisition Corp.*,
   360 F.3d 404 (3d Cir. 2004)...................................................................................17

*Hess v. Port Auth. Trans-Hudson Corp.*,
   513 U.S. 30 (1994).................................................................................................14

*Hollus v. Amtrak Ne. Corridor*,
   937 F. Supp. 1110 (D.N.J. 1996) ..........................................................................11

*Ind. Coal Council v. Hodel*,
   118 F.R.D. 264 (D.D.C. 1988)...............................................................................17

*Int'l Union of Operating Eng'rs, Local 542 v. Del. River Joint Toll Bridge Comm'n*,
   311 F.3d 273 (3d Cir. 2002)...................................................................................14

*Kansas City Area Transp. Auth. v. Missouri*,
   640 F.2d 173 (8th Cir. 1981) .................................................................................13

*Lusitania Sav. Bank, FSB v. Progressive Cas. Ins. Co.*,
   328 F. Supp. 2d 514 (D.N.J. 2004) ..................................................................10, 11

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
   138 S. Ct. 1461 (2018)...........................................................................................14

ii

*Ne. Bancorp, Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
  472 U.S. 159 (1985) ................................................................................................13

*Nebraska ex rel. Nelson v. Cent. Interstate Low-Level Radioactive Waste
  Comm'n*,
  834 F. Supp. 1205 (D. Neb. 1993), *aff'd* 26 F.3d 77 (8th Cir. 1994) ......................13

*Port Auth. Trans-Hudson Corp. v. Feeney*,
  495 U.S. 299 (1990) ................................................................................................14

*Seattle Master Builders Ass'n v. Pac. Nw. Elec. Power & Conservation Planning
  Council*,
  786 F.2d 1359 (9th Cir. 1986) ................................................................................13

*State ex rel. Dyer v. Sims*,
  341 U.S. 22 (1951) ..................................................................................................13

*Tarrant Reg'l Water Dist. v. Herrmann*,
  569 U.S. 614 (2013) ..........................................................................................15, 16

*Texas v. New Mexico*,
  482 U.S. 124 (1987) ................................................................................................13

*Wayne Land & Mineral Grp. v. Del. River Basin Comm'n*,
  894 F.3d 509 (3d Cir. 2018) ..............................................................................18, 19

## STATUTES

N.J. Stat. Ann. § 32:23 ............................................................................................3, 4

N.Y. Unconsol. Law § 9801 .........................................................................................3

N.Y. Unconsol. Law § 9906 .........................................................................................4

N.J. P.L. 2017, Chapter 324 ............................................................................... passim

## OTHER AUTHORITIES

A.C.R. 217, 216th Leg. (N.J. 2015) ...........................................................................16

A.C.R. 68, 217th Leg. (N.J. 2016) .............................................................................16

A.C.R. 90, 218th Leg. (N.J. 2018) .............................................................................16

Fed. R. Civ. P. 56 ......................................................................................................10

iii

S.C.R. 168, 216th Leg. (N.J. 2015)................................................................................16

U.S. Const. art. I, § 10, cl. 3.........................................................................................3

Pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1, Plaintiff Waterfront Commission of New York Harbor (the "Commission") respectfully submits this memorandum of law in support of its motion for summary judgment.

## PRELIMINARY STATEMENT

This Court already decided every issue in this case as a matter of law when on June 1, 2018, it granted the Commission's motion for a preliminary injunction and denied Defendants' motions to dismiss.  Dkt. No. 43 ("Op.").  Accordingly, the Commission is entitled to summary judgment for the same reasons that the Court preliminarily enjoined Governor Murphy from implementing or enforcing Chapter 324 of the 2017 New Jersey Public Laws ("Chapter 324").

The Complaint raises a single narrow question:  Can New Jersey unilaterally withdraw from an interstate compact that it entered into with New York in 1953?  Relying on the plain terms of the compact and well-established law, the Court already held that New Jersey cannot because the compact unambiguously provides that it can be amended only by Congress or by agreement of *both* New York and New Jersey.  Accordingly, the Court held that New Jersey's attempt to dissolve the compact unilaterally "runs counter to the requirement that any change to the compact occur through concurring legislation."  Op. at 17.  The Court's holding was based solely on its reading of the compact.  No amount of factual development can alter the conclusion that, as a matter of law, New Jersey cannot withdraw from the compact without New York's consent (which it indisputably does not have).

In granting the preliminary injunction, the Court also rejected as a matter of law all of the affirmative defenses proffered by Defendants—including the defense that this lawsuit could not be commenced because it had not been approved by the Commission's two Commissioners.  The

Court held that the Commission's Bylaws (the "Bylaws") by their plain terms authorized Commission Counsel to commence this case without seeking the consent of the Commissioners. It further held that even if the Commissioners' consent were required, it was undisputed that one Commissioner ratified the suit while the other recused himself; accordingly, as a matter of law, the Commissioners unanimously approved the lawsuit.  Op. at 11–12.  Defendants' other defenses—including lack of Article III standing, sovereign immunity, and incapacity to sue— likewise were all resolved in favor of the Commission on purely legal grounds.  Op. at 6–15.

Because all of the issues in this case have been resolved on legal grounds, factual discovery before deciding this summary judgment motion would be futile.  In an August 24, 2018 letter to the Court, the Governor argued that before a summary judgment motion should be permitted, discovery should be conducted into two areas:  (1) the Commission's "custom and practice" of commencing lawsuits; and (2) "the intent of the compact's drafters and the compact's legislative history."  Dkt. No. 54 at 2 (citation omitted).  Factual discovery into the Commission's "custom and practice" of commencing lawsuits is unwarranted, however, because the Court has already determined as a matter of law that Commission Counsel was authorized by the Bylaws to commence this lawsuit without seeking the Commissioners' approval, and in any event the Commissioners ratified the suit.  Factual discovery into the compact drafters' intent and the legislative history is likewise unwarranted because, as the Court also previously ruled, the compact is unambiguous:  By its plain terms, the compact does not permit New Jersey to withdraw unilaterally.  In all events, discovery into "legislative history" is nonsensical; any legislative history is publicly available and has been available to Defendants since this case was filed in January.

2

## FACTUAL BACKGROUND

**A.   The Waterfront Commission Compact**

The Commission was established in 1953 by a compact between New York and New Jersey (the "Waterfront Compact" or the "Compact").  Statement of Undisputed Material Facts ("SOUMF") ¶¶ 1, 3.[1]  The legislatures in both states concurrently enacted legislation entering into the Compact, and the governors of each state signed the legislation into law.  *See* N.J. Stat. Ann. § 32:23-1 *et seq.*; N.Y. Unconsol. Law § 9801 *et seq.*  As required by the Compact Clause of the United States Constitution, the Waterfront Compact was submitted to Congress for its consent.  *See* U.S. Const. art. I, § 10, cl. 3.  The Compact was approved by an Act of Congress and signed into federal law by President Dwight D. Eisenhower.  SOUMF ¶ 2.  As the Supreme Court previously explained, "[t]his was no perfunctory consent."  *De Veau v. Braisted*, 363 U.S. 144, 149 (1960).  To the contrary, Congress held a series of hearings and issued findings expressly endorsing the approach taken by New York and New Jersey in the Compact.  *Id.* at 149–50.

In the Compact, New York and New Jersey declared that:

> [t]he conditions under which waterfront labor is employed with the Port of New York district are depressing and degrading to such labor, resulting from the lack of any systematic method of hiring, the lack of adequate information as to the availability of employment, corrupt hiring practices and the fact that persons conducting such hiring are frequently criminals and persons notoriously lacking in moral character and integrity and neither responsive nor responsible to the employers nor to the uncoerced

---

[1] The Statement of Undisputed Material Facts cites to Exhibits annexed to the Declaration of Michael A. Cardozo in Support of Plaintiff's Motion for Summary Judgment.

will of the majority of the members of the labor organizations of the employee; that as a result waterfront laborers suffer from irregularity of employment, fear and insecurity . . .and a loss of respect for the law; that not only does there result a destruction of the dignity of an important segment of American labor, but a direct encouragement of crime which imposes a levy of greatly increased costs on food, fuel and other necessaries handled in and through the Port of New York district.

Compact art. I, §§ 1–4.

To address these issues, the Compact established the Commission as "an instrumentality of the States of New York and New Jersey." *Id.* art. III, § 1. The Compact granted the Commission the power to license, register, and regulate the waterfront employment of stevedores, pier superintendents, hiring agents, longshoremen, and port watchmen. *Id.* art. IV, § 6; art. V, § 1; art. VI, § 1; art. VIII, § 1; art. X, § 1. It provides that no one in those professions may work in the Port without first being licensed and registered by the Commission. *Id.* art. V, § 1; art. VI, § 1; art. VIII, § 1; art. X, § 1. The Compact as amended gives the Commission the power to conduct background screenings of those seeking employment on the waterfront and to prevent individuals who pose a danger to the public peace or safety, lack good character and integrity, or who have associated with members of an organized crime or terrorist group from infiltrating the Port. N.J. Stat. Ann. § 32:23-86(2), (6)–(8); N.Y. Unconsol. Law § 9906(2), (6)–(8). To ensure compliance with the Compact's provisions and licensing regime, the Commission is empowered to conduct investigations, maintain a police force, and take action against violators, including removing them from the register of available labor, and to assess and collect fines. Compact art. IV, § 11; N.J. Stat. Ann. § 32:23-86(3)–(4); N.Y. Unconsol. Law § 9906(3)–(4).

4

Any changes to the Compact must be made by legislation enacted by one state and "concurred in by the Legislature of the other."  SOUMF ¶ 4; Compact art. XVI, § 1.  Pursuant to this provision, and as this Court wrote, "the Compact has been amended numerous times through concurrent legislation" enacted by New York and New Jersey.  Op. at 3.  In approving the Compact, Congress reserved for itself "the right to alter, amend, or repeal this [Waterfront Compact] Act."  SOUMF ¶ 5; Compact art. XVI, § 2.[2]

**B.     New Jersey's Previous Attempt to Unilaterally Withdraw from the Compact**

In 2015, New Jersey's legislature passed Senate Bill No. 2277, which directed former Governor Chris Christie to withdraw New Jersey from the Waterfront Compact.  SOUMF ¶ 11.  Governor Christie vetoed the bill, stating that it would be illegal for New Jersey to unilaterally withdraw from a bilateral compact that was ratified by Congress:

> I am advised that federal law does not permit one state to unilaterally withdraw from a bi-state compact approved by Congress.  As a result, it is premature for New Jersey to contemplate withdrawing from the Waterfront Commission until New York considers similar legislation.

SOUMF ¶ 11.  New York has never enacted "similar legislation" concerning a potential withdrawal from the Waterfront Compact.  SOUMF ¶ 10.

Just last year, Governor Christie again admitted that New Jersey is powerless to unilaterally change the terms of the Compact.  SOUMF ¶ 12.  On August 7, 2017, New Jersey passed legislation giving the governors of New York and New Jersey veto power over the

---

[2] Pursuant to this provision, on several occasions resolutions were introduced in the New Jersey legislature requesting that Congress repeal the Compact.  Op. at 20 n.18.

5

Commission.  *Id.*  In advising the Commission of the newly enacted legislation, Governor

Christie indicated, "[t]he measure I signed into law today will take effect upon the enactment of

a similar law by the State of New York."  *Id.*  To date, New York has not passed any

corresponding legislation as required to modify the Compact; accordingly, that New Jersey

statute has not gone into effect.[3]

> **C.    New Jersey's Current Attempt to Unilaterally Withdraw from the Compact**

Notwithstanding his previous concession that unilateral withdrawal would be

unconstitutional, on January 15, 2018, Governor Christie, in his last day in office, signed into

law Chapter 324, which purports to dissolve the Waterfront Compact and transfer the

Commission's operations in New Jersey to the New Jersey State Police.  *See* SOUMF ¶¶ 7–9.

The new law is substantially the same as the one that Governor Christie vetoed three years ago

on the ground that it would be illegal for New Jersey to unilaterally withdraw from a bilateral

compact approved by Congress.  SOUMF ¶ 11.

The new law directs New Jersey's Governor, within 30 days of the law's signing, to

notify Congress, the governor of New York, and the Commission that New Jersey will withdraw

from the Waterfront Compact.  SOUMF ¶ 8; Chapter 324, § 2.  Ninety days after that notice is

provided, the law declares that the Waterfront Compact is "dissolved."  SOUMF ¶ 9; Chapter

---

[3] The New Jersey legislature has likewise conceded that New Jersey cannot unilaterally change
the terms of the Compact.  For instance, after enacting legislation requiring the Commission to
open the longshoremen's register, the New Jersey Assembly passed a Resolution asking New
York to pass similar legislation because the New Jersey legislation "remains inoperative until the
State of New York enacts legislation of substantially similar substance and effect."  SOUMF
¶ 13.

324, § 31.  At that point, the New Jersey State Police "shall assume all of the powers, rights, assets, and duties of the commission within [New Jersey]."  Chapter 324, § 4(b)(1).  Moreover, Commission funds "applicable to [New Jersey]" would be seized and transferred to the New Jersey treasury.  *Id.* § 4(b)(2).  Under the law, New Jersey would abandon the debts, liabilities, and contracts of the Commission unless they relate solely to New Jersey.  *Id.* § 4(b)(4).

The new law grants the New Jersey State Police many of the powers that the Compact gives to the Commission—including the power to adopt rules and regulations governing employment in the commercial ports in New Jersey; to issue and revoke licenses to pier superintendents and stevedores; and to establish a registry for longshoremen.  *Id.* §§ 5–11. Assessments currently payable to the Commission under the Compact would instead be paid to the State Police under the new legislative regime.  *Id.* §§ 25–26.  The law also encourages employees currently working for the Commission to apply for employment with the New Jersey State Police.  *Id.* § 4(b)(3).

### D.    Procedural History

The Commission commenced this lawsuit on January 16, 2018.  Dkt. No. 1.  The Complaint contains a single count against Governor Philip Murphy (the "Governor"):  It seeks a declaratory judgment that Chapter 324 is preempted by the Compact and an injunction enjoining enforcement of that law.  *Id.* ¶¶ 56–60.  Immediately upon filing suit, the Commission moved for a preliminary injunction enjoining the Governor from implementing or enforcing Chapter 324. Dkt. No. 8.  The President of New Jersey's Senate and its General Assembly Speaker were granted permission to intervene.  Dkt. No. 18.  The Governor, Senate President, and General Assembly Speaker opposed the motion for a preliminary injunction and cross-moved to dismiss

7

Case 2:18-cv-00650-SDW-LDW   Document 58-4   Filed 10/12/18   Page 13 of 29 PageID: 1120

the Complaint on various grounds, including that the Commission lacked Article III standing and the capacity to sue the Governor, that Commission Counsel had no authority to commence this lawsuit, and that the suit was barred by sovereign immunity.  Dkt. Nos. 21, 22.[4]

On June 1, 2018, the Court issued a 23-page decision granting the Commission's preliminary injunction motion and denying Defendants' motions to dismiss.  The Court began by rejecting all of Defendants' arguments for dismissal.  It first held that the Commission had alleged sufficient injury to establish standing to challenge Chapter 324 because "the Commission will be divested of its assets and will cease to exist" if the law were implemented.  Op. at 7–8.  It then concluded that Defendants had no sovereign immunity defense under the *Ex parte Young* doctrine because "a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State."  *Id.* at 8 (quoting *Mercer Cty. Childrens Med. Daycare, LLC v. O'Dowd*, No. 13-cv-1436, 2014 WL 546346, at *3 (D.N.J. Feb. 10, 2014)).

The Court further held that the Compact, which grants the Commission the power "[t]o sue and be sued," gave it the capacity to bring this lawsuit.  *Id.* at 13–14.  It also held that the Commission is not a state agency and is therefore not precluded from suing one of its member states.  *Id.* at 12–13.

Notably, the Court rejected on several grounds the defense that Commission Counsel lacked the authority to commence this lawsuit without the specific consent of the Commission's two commissioners.  The Court first held that the Bylaws expressly authorized Commission

---

[4] The New Jersey Senate and General Assembly later also moved to intervene.  Dkt. No. 35. That motion was granted after the conclusion of briefing and oral argument on Plaintiff's motion for a preliminary injunction.  Dkt. No. 37.

Counsel to commence this suit when they granted her the power to "handle [] legal matters" for the Commission.  *Id.* at 11 (quoting Bylaws at 6–7).  The Court further held that it was undisputed that "even if a unanimous vote of the commissioners was needed to file this suit, one has ratified [Commission Counsel's] actions, and the other has recused himself from this matter entirely."  *Id.* at 11–12.  As a third independent ground for rejecting Defendants' lack-of-authority defense, the Court held that "in its sixty-five year history, neither the Executive Director nor General Counsel have been required to obtain authorization from the commissioners to commence . . . law suits."  *Id.* at 12.  In the Court's view, "even applying the summary judgment standard, this Court would conclude" that custom and practice further establishes Commission Counsel's authority to commence lawsuits on the Commission's behalf without seeking the commissioners' consent.  *Id.*[5]

Turning to the preliminary injunction motion, the Court held that the Commission was likely to succeed on its claim for a declaration that Chapter 324 is preempted, concluding that Chapter 324 violated the Compact.  *Id.* at 15–20.  The Court observed that the Compact by its express terms can be modified only by concurrent legislation by New York and New Jersey.  *Id.* at 17–19.  Chapter 324, which purports to unilaterally withdraw New Jersey from the Compact and dissolve the Commission, thus "conflicts with the Compact."  *Id.* at 17.  "Allowing one state to dictate the manner and terms of the Commission's dissolution, and the subsequent distribution of the agency's assets, runs counter to the requirement that any change to the Compact occur

---

[5] The Court also rejected Defendants' defense that the Commission cannot bring a claim under the Supremacy Clause.  As the Court explained, the Commission's claim is not brought under the Supremacy Clause but rather under the Declaratory Judgment Act and the Compact.  *Id.* at 14.

9

through concurring legislation." *Id.*  The Court refused to "rewrite[]" the Compact to add "the right to unilateral withdrawal." *Id.* at 20.

In addition to finding that the Commission was likely to succeed on the merits, the Court held that the Commission would suffer irreparable harm absent an injunction and that the balance of harms and the public interest both favored an injunction. *Id.* at 20–23.  Accordingly, the Court issued a preliminary injunction enjoining Governor Murphy from implementing or enforcing Chapter 324.  Defendants did not appeal the injunction order, and it remains in effect.

On July 13, 2018, Defendants filed their answers.  Dkt. Nos. 49, 50.  One month later, after receiving Magistrate Judge Wettre's Local Rule 16.1 Order with respect to early disclosure (Dkt. No. 51), the Commission engaged in extensive discussions with counsel for Defendants regarding the purported need for discovery.  On August 17, 2018, in light of the Court's preliminary injunction decision resolving all of the issues in the case, the Commission sought permission to move for summary judgment.  Dkt. No. 52.  Defendants opposed that application, arguing that summary judgment is premature and contending that they required protracted discovery.  Dkt. Nos. 53, 54.  Following a telephonic conference with the parties, Magistrate Judge Wettre, "viewing this case as amendable to summary judgment at this time," declined to order discovery and granted the Commission's request for leave to file this summary judgment motion.  Dkt. No. 57.

## ARGUMENT

A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "will affect the outcome of a lawsuit under the applicable law."  *Lusitania*

10

*Sav. Bank, FSB v. Progressive Cas. Ins. Co.*, 328 F. Supp. 2d 514, 517 (D.N.J. 2004) (Wigenton,

J.).  "[A] dispute over a material fact is 'genuine' if the evidence is such that a reasonable fact

finder could return a verdict for the nonmoving party." *Id.*  Claims raising purely legal issues are

appropriate for resolution on a motion for summary judgment because they do not involve

factual disputes.  *See Hollus v. Amtrak Ne. Corridor*, 937 F. Supp. 1110, 1112–13 (D.N.J. 1996)

("These motions [for summary judgment] . . . present pure questions of law and, accordingly, are

ripe for summary adjudication.").

  The Commission is entitled to summary judgment on its claim seeking a declaration that

Chapter 324 is preempted by the Waterfront Compact because the claim raises no factual issues

requiring resolution and the Commission is entitled to judgment as a matter of law.  The only

facts relevant to the Commission's claim are a matter of public record and are undisputed:

- New York and New Jersey entered into the Waterfront Compact in 1953.  SOUMF ¶ 1.

- The Compact states that any changes to it must be made by legislation enacted by one state and "concurred in by the Legislature of the other."  SOUMF ¶ 4.

-  Congress ratified the Compact in a resolution stating that Congress reserved for itself "the right to alter, amend, or repeal this [Waterfront Compact] Act."  SOUMF ¶ 5.

- Chapter 324 purports to unilaterally withdraw New Jersey from the Compact and dissolve the Commission.  SOUMF ¶¶ 8, 9.

  Based on those undisputed facts, the Commission is entitled to judgment as a matter of

law that Chapter 324 conflicts with the Compact and is thus preempted, as the Court already held

in granting the preliminary injunction.  Similarly, the Court has already held that each of

Defendants' affirmative defenses fails as a matter of law based on the plain terms of the Bylaws

11

and certain undisputed facts.  Since all of the issues in this case can be resolved in the Commission's favor as a matter of law, the Commission is entitled to summary judgment.

**I.    AS A MATTER OF LAW, NEW JERSEY CANNOT UNILATERALLY WITHDRAW FROM THE WATERFRONT COMPACT, AS THIS COURT HAS ALREADY DETERMINED.**

In granting the Commission's motion for a preliminary injunction, the Court held that, by its unambiguous terms, the Waterfront Compact precludes New Jersey from unilaterally withdrawing and dissolving the Commission.  Op. at 15–20.  In so ruling, the Court relied on two provisions of the Compact.  The first is the concurrency requirement, which states that "Amendments and supplements to this compact . . . may be adopted by the action of the Legislature of either State concurred in by the Legislature of the other."  *Id.* at 17 (quoting Compact art. XVI, ¶ 1).  The second provision requires the Compact to be construed liberally to eliminate the evils of corruption at the Port and effectuate the goals of the Compact.  *Id.* (citing Compact art. XVI, ¶ 3).  The Court held that "[b]ased on the foregoing provisions," New Jersey's attempt to withdraw unilaterally from the Compact and dissolve the Commission "directly conflicts with the Compact."  *Id.*  As the Court explained, "[a]llowing one state to dictate the manner and terms of the Commission's dissolution, and the subsequent distribution of the agency's assets, runs counter to the requirement that any change to the Compact occur through concurring legislation."  *Id.*  The Court's holding was based solely on its reading of the terms of the Compact and did not rely on any facts outside the Compact's four corners.

**A.    The Court's Prior Ruling that Chapter 324 Violates the Compact Is Correct as a Matter of Law.**

The Court's ruling that Chapter 324 violates the Compact is undoubtedly correct as a legal matter.  It is undisputed that the Waterfront Compact was enacted by New York and New

12

Jersey and approved by Congress under the Compact Clause.  SOUMF ¶¶ 1, 2.  Accordingly, the Compact is both a binding contract and a federal statute.  *Alabama v. North Carolina*, 560 U.S. 330, 351 (2010); *Texas v. New Mexico*, 482 U.S. 124, 128 (1987).

Because a compact is a federal statute, a state cannot unilaterally withdraw from or otherwise modify a compact unless the compact so provides.  *Ne. Bancorp, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 472 U.S. 159, 175 (1985) (noting that states' inability to unilaterally modify or repeal a bi-state compact is among "the classic indicia of a compact"); *Seattle Master Builders Ass'n v. Pac. Nw. Elec. Power & Conservation Planning Council*, 786 F.2d 1359, 1363 (9th Cir. 1986) (holding that a member state is "not free to modify or repeal its participation unilaterally"); *Kansas City Area Transp. Auth. v. Missouri*, 640 F.2d 173, 174 (8th Cir. 1981) ("One party to an interstate compact may not enact legislation which would impose burdens upon the compact absent the concurrence of other signatories."); *Nebraska ex rel. Nelson v. Cent. Interstate Low-Level Radioactive Waste Comm'n*, 834 F. Supp. 1205, 1208 (D. Neb. 1993) ("It has long been the law that one member state in a compact cannot unilaterally nullify the provisions of a compact or give final meaning to the terms of a compact."), *aff'd* 26 F.3d 77 (8th Cir. 1994); *Alcorn v. Wolfe*, 827 F. Supp. 47, 52–53 (D.D.C. 1993) (a compact "cannot be modified unilaterally by state legislation").  For example, when the West Virginia Supreme Court purported to nullify the Ohio River Water Sanitation Compact, the Supreme Court reversed, "reject[ing] the suggestion" that a compact "can be unilaterally nullified, or given final meaning by an organ of one of the contracting States."  *State ex rel. Dyer v. Sims*, 341 U.S. 22, 28 (1951).

13

Nor can a state unilaterally dissolve a bi-state agency created by a compact unless the compact expressly provides. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 42 (1994) (holding that "bistate entities created by compact . . . are not subject to the unilateral control of any one of the States that compose the federal system"); *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 314 (1990) (Brennan, J., concurring) (noting that "[w]hile a State has plenary power to create and destroy its political subdivisions, a State enjoys no such hegemony over an interstate agency"); *Int'l Union of Operating Eng'rs, Local 542 v. Del. River Joint Toll Bridge Comm'n*, 311 F.3d 273, 276 (3d Cir. 2002) (holding that bi-state commissions "are to be regarded not as extensions of each compacting state's authority, but rather as 'independently functioning parts of a regional polity and of a national union'"); *Bunk v. Port Auth. of N.Y. & N.J.*, 144 N.J. 176, 184 (1996) (holding that a state cannot "unilaterally impose its legislative will on [a] bi-state agency"); *see also Alpha Painting & Constr. Co. v. Del. River Port Auth.*, No. 16-cv-5141, 2018 WL 3085208, at *7 (D.N.J. June 22, 2018) ("Bi-state entities created by compact are not subject to the unilateral control of any one of the states.").

The Waterfront Compact does not provide New Jersey with the right to unilaterally withdraw from the Compact or dissolve the bi-state Commission. To the contrary, the Compact provides that it may be repealed only by Congress (Compact art. XVI, Sec. 2) or by agreement of *both* New York and New Jersey (Compact art. XVI, ¶ 1). Courts may not "read absent terms into an interstate compact." *Alabama v. North Carolina*, 560 U.S. at 352. "Through the years interstate compacts have often included express withdrawal provisions," this Court observed, including many compacts ratified by Congress around the same time as the Waterfront Compact. Op. at 18–19 n. 15. The absence of any comparable right to withdraw unilaterally in the

14

Waterfront Compact further demonstrates that the parties did not intend for such a right to exist. *See Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 633 (2013) ("Looking to the customary practices employed in other interstate compacts also helps us to ascertain the intent of the parties to this Compact.").

Accordingly, this Court was correct when it declined to "construe the Compact in a manner that rewrites the agreement to include the right to unilateral withdrawal." Op. at 20. By the plain terms of the Compact, New Jersey must secure the consent of New York or Congress if it wants to withdraw. As such, Chapter 324, which purports to withdraw New Jersey from the Compact and dissolve the Commission without New York's consent, conflicts with the plain terms of the Compact and is thus preempted.[6]

New Jersey has conceded that point several times. In 2015, former Governor Christie, in vetoing a law virtually identical to Chapter 324, wrote that "federal law does not permit one state to unilaterally withdraw from a bi-state compact approved by Congress." SOUMF ¶ 11.[7] And the New Jersey Legislature has repeatedly introduced resolutions asking Congress to repeal the Compact—implicitly recognizing that New Jersey cannot repeal the Compact itself. A.C.R. 90,

---

[6] The Court also correctly rejected Defendant's contention, relying on *Murphy v. National Collegiate Athletic Association,* 138 S. Ct. 1461 (2018), that the anti-commandeering doctrine would be violated by New Jersey not being permitted to withdraw from the Compact, observing that "Congress has not passed a statue dictating what New Jersey's legislature may or may not do." Op. at 19-20 n. 17.

[7] *See also* SOUMF ¶ 12 (statement by Governor Christie acknowledging, with respect to a 2017 New Jersey law giving the Governors of New York and New Jersey veto power over the Commission's actions, that "[t]he measure I signed into law will take effect upon the enactment of a similar law by the State of New York").

218th Leg. (N.J. 2018); A.C.R. 68, 217th Leg. (N.J. 2016); A.C.R. 217, 216th Leg. (N.J. 2015); S.C.R. 168, 216th Leg. (N.J. 2015).  The Supreme Court has explained that "[a] party's course of performance under the Compact is highly significant evidence of its understanding of the compact's terms." *Tarrant*, 569 U.S. at 636 (quoting *Alabama v. North Carolina*, 560 U.S. at 331).  New Jersey's past actions show that even it understood that it does not have the right to unilaterally withdraw from the Compact and dissolve the Commission.

### B.       Discovery Is Unwarranted Because the Compact Is Unambiguous.

In a letter to the Court, the Governor argued that "discovery is needed to determine the intent of the drafters of the Waterfront Compact and its legislative history to resolve whether and how New Jersey and New York intended the Compact to be terminated or either State to withdraw."  Dkt. No. 54 at 2.  However, this Court's holding that New Jersey cannot unilaterally withdraw from the Waterfront Compact was a legal determination based on the plain terms of the Compact.  No amount of factual discovery can contradict that holding, and discovery into the legislative history is unwarranted for several reasons.

*First*, the Compact is unambiguous, and therefore the legislative history is irrelevant.  As the Court already ruled, the Compact's plain terms do not provide for unilateral termination by New Jersey, but instead provide for termination by either Congress or by bilateral agreement between New York and New Jersey.  Op. at 18.  It is thus clear from the text that New Jersey has no right to withdraw from the Compact or dissolve the Commission unilaterally.  "The Supreme Court has repeatedly explained that recourse to legislative history or underlying legislative intent is unnecessary when a statute's text is clear and does not lead to an absurd result." *Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 406 (3d Cir. 2004) (Alito, J.).

16

*Second*, even if the Compact were ambiguous as to whether New Jersey could terminate unilaterally, that ambiguity should be resolved by referencing the Compact's liberal construction clause, not the legislative history.  The Court previously held that even if the Compact were ambiguous, "reliance on the Compact's liberal construction clause and statement of purpose would be appropriate to help resolve the ambiguity."  Op. at 17 (quoting *Nebraska ex rel. Nelson*, 207 F.3d at 1026).  The Compact's construction clause states that "[i]n accordance with the ordinary rules for construction of interstate compacts this compact shall be liberally construed to eliminate the evils described therein and to effectuate the purposes thereof."  Compact art. XVI, ¶ 3.  Pursuant to that clause, any ambiguity concerning whether New Jersey can unilaterally terminate the Compact should be resolved against termination and in favor of a reading that allows the Commission to continue its mission to ferret out corruption in the Port.

*Third*, legislative history is comprised of publicly available government documents and is thus not subject to fact discovery.  *See Ind. Coal Council v. Hodel*, 118 F.R.D. 264, 266–68 (D.D.C. 1988) (denying motion to compel party to provide access to database of legislative history because the "coercive power of discovery can be invoked to uncover facts, but the task of researching the law is left to the parties themselves").  Defendants can certainly continue to research the legislative history behind the Waterfront Compact and present their findings to the Court, as Governor Murphy has already done in his motion to dismiss.  Dkt. No 21-1 at 23–25.  But Defendants are not entitled to "discovery" on legislative history.  Any information concerning the history and negotiation of the bi-state Compact is publically available or already in New Jersey's possession.

17

*Fourth*, even if legislative history were relevant, it does nothing to help Defendants' cause. Op. at 18. In opposing the preliminary injunction motion, Defendants argued that the legislative history shows that neither New York nor New Jersey intended for the Compact to be permanent. Even if that were true, it is entirely consistent with the Court's holding that, given the absence of a unilateral withdrawal provision, the Compact can be repealed only by Congress or by both states acting concurrently. As the Court explained, "the states had an opportunity to include provisions regarding withdrawal from or termination of their agreement" but "only Congress explicitly reserved 'the right to alter, amend, or repeal this Act.'" *Id.* (emendations omitted) (quoting Compact art. XVI, Sec 2).

In his letter to the Court requesting discovery into the legislative history, the Governor relied on *Wayne Land & Mineral Group v. Delaware River Basin Commission*, 894 F.3d 509 (3d Cir. 2018). That case is not probative here, however, because it confirms that resort to legislative history as an interpretative aid is appropriate *only* where the terms of a compact are ambiguous. *Wayne Land & Mineral Grp.*, 894 F.3d at 527 ("[T]he analysis begins with the express terms of the Compact as the best indication of the intent of the parties. But, if the text of the Compact is ambiguous, we must then turn to other interpretive tools." (internal citations omitted)). In *Wayne Land*, the Third Circuit held that it was unclear whether the appellant's plan to conduct fracking constituted a "project" within the meaning of the Delaware River Basin Compact. *Id.* at 533–34. Finding the Compact ambiguous, the Court remanded for the district court to consider evidence of the intent behind the Compact's use of the word "project." *Id.*

Here, by contrast, as this Court has already ruled, the Waterfront Compact is unambiguous that New Jersey has no unilateral right to withdraw. The Compact contains no

language providing a right to unilateral withdrawal, but instead provides two different means for terminating the Compact:  repeal by Congress or by agreement of both states.  Since there is no ambiguity in the Waterfront Compact, *Wayne Land* does not apply.[8]

In sum, there are no factual issues to resolve, and discovery into legislative history would be both improper and futile.  For the reasons stated in the Court's decision granting the preliminary injunction, the Commission is entitled to judgment as a matter of law that Chapter 324 conflicts with the Waterfront Compact and is therefore preempted, null, and void.

## II.      DEFENDANTS' AFFIRMATIVE DEFENSES FAIL AS A MATTER OF LAW, AS THE COURT PREVIOUSLY HELD.

In denying Defendants' motions to dismiss, the Court rejected all of Defendants' affirmative defenses as a matter of law.  That ruling was correct and entitles the Commission to summary judgment on those defenses as well.

In his letter to the Court requesting discovery, the Governor argued that one of his defenses—that Commission Counsel was not authorized to commence this lawsuit without the commissioners' consent—turns on factual questions that require further development.  Dkt. No. 54 at 2.  According to the Governor, the Court rejected the defense based on the Commission's "custom and practice" of permitting Commission Counsel to commence lawsuits without the commissioners' consent.  *Id.*  The Governor contends that fact discovery might show that the

---

[8] Moreover, *Wayne Land* did not hold that even if a compact was ambiguous a party was entitled to discovery on a compact's legislative history.  Instead, the Court remanded for the district court to make a factual determination in the first instance regarding the intention of the parties.  The fact-finding would be based on the legislative and negotiating history and the parties' course of dealing—information that is readily available to both parties here without discovery.  *Id.* at 534.

Commission Counsel has actually sought approval from the Commissioners before bringing lawsuits in the past, which would undercut the Court's "custom and practice" rationale.

The Governor's argument overlooks the fact that "custom and practice" was only one of three grounds on which the Court rejected the Governor's lack-of-authority defense. The other two grounds raise no factual questions and independently support a ruling for the Commission as a matter of law.

The Court first rejected Defendants' "authority" defense based on the plain terms of the Compact and the Bylaws. Op. at 10–11. As the Court observed, the Compact gives the Commission the power "[t]o sue" and to retain counsel. *Id.* at 10 (citing Compact art. IV, §§ 1, 5). The Compact further states that the Commission's powers (except the power to make rules and regulations) can be exercised by any officer to whom those powers have been delegated. *Id.* (citing Compact art. IV, concluding paragraph). Implementing those provisions, the Bylaws delegate to Commission Counsel the authority to "handle [] legal matters and perform such other duties as may be assigned to [her] by the Commission or the Executive Director." *Id.* at 10–11 (quoting Bylaws at 6–7); SOUMF ¶ 17.[9] This Court has ruled that by giving Commission Counsel the authority to "handle" the Commission's "legal matters," the Bylaws authorized her to bring lawsuits on the Commission's behalf. Op. at 10–11. That conclusion is compelled solely by the terms of the Compact and the Bylaws themselves; it does not turn on any factual issues that could be developed during discovery.

---

[9] The Executive Director delegated to Commission Counsel the power to bring legal actions. SOUMF ¶ 18.

The Court went on, applying what it said was a "summary judgment" standard (*id*. at 12), to reject the "authority" defense on a second ground: that even if the commissioners were required to approve this lawsuit, the undisputed facts show that they did provide unanimous approval. *Id.* at 11–12. As the Court noted, it is undisputed that one of the Commission's two commissioners (Commissioner Goldstock) ratified the lawsuit and the other (Commissioner Murphy) recused himself from any matters involving Chapter 324. *Id.* at 11; SOUMF ¶¶ 20, 21.[10] The Court held that based on its reading of the Bylaws, that one "yes" vote and one recusal constitutes unanimous ratification by the two commissioners. Op. at 12 ("Defendants have not pointed to anything in the Compact, its bylaws, or relevant case law to support their argument that both commissioners' votes are needed to constitute a quorum. As such, this Court is persuaded that Commissioner Goldstock's approval would be sufficient to authorize [Counsel's] actions in bringing this suit.").

No amount of factual discovery can alter that conclusion. Because it is undisputed that Commissioner Goldstock approved the lawsuit and Commissioner Murphy recused himself, the commissioners unanimously approved this suit as a matter of law.

After rejecting Defendants' "authority" defense on those two grounds, the Court went on to explain that evidence concerning the Commission's past practices provided an "[a]dditional[]" basis for rejecting the defense. *Id*. As the Court explained, the undisputed evidence before it demonstrated that the commissioners have never approved the more than 83 legal proceedings in which the Commission has been involved in its sixty-five-year history. *Id*. In the Court's view,

---

[10] Defendants did not dispute those facts when given the opportunity. Op. at 11 n.7.

21

that custom and practice further demonstrates that Commission Counsel was authorized to commence this lawsuit without the commissioners' consent.  *Id.*  If "custom and practice" had been the Court's *only* basis for rejecting the "authority" defense, and if the Governor could somehow show that discovery might contradict those undisputed facts, he might be entitled to seek discovery into whether the evidence concerning the Commission's past practices is accurate.  But "custom and practice" was merely a tertiary reason why the defense fails.  Discovery into "custom and practice," assuming it could be otherwise justified with respect to this third basis for rejecting the authority defense, would not undermine the Court's other two rationales that, as a matter of law, this lawsuit was properly authorized.

In his letter to the Court, the Governor did not request discovery on any of his other affirmative defenses—and for good reason.  Each of those affirmative defenses was rejected on purely legal grounds in the Court's order denying the motion to dismiss.  First, the Court held that the Commission alleged sufficient injury to support standing based on Chapter 324's "directives," under which "the Commission will be divested of its assets and cease to exist."  Op. at 7–8.  Second, the Court also held that Defendants' sovereign immunity defense is precluded as a matter of law by the *Ex parte Young* doctrine.  *Id.* at 8-9.  Third, the Court rejected Defendants' contention that the Commission is a New Jersey agency and thus cannot sue the state, holding that as a legal matter "Compact Clause entities are not equivalent to state agencies."  *Id.* at 12.  Fourth, it held that the express terms of the Compact defeat the defense that the Commission lacks the capacity to sue.  *Id.* at 13–14.

In each of these cases, the Court rejected the affirmative defenses on purely legal grounds.  Accordingly, no fact discovery is required to resolve these defenses.  Each fails as a matter of law.

## CONCLUSION

As demonstrated in this Memorandum, this Court has already determined as a matter of law that New Jersey cannot unilaterally withdraw from the Waterfront Compact or dissolve the Commission and that Defendants' affirmative defenses fail.  Accordingly, the Commission respectfully requests that the Court grant summary judgment on its claim seeking a declaration that Chapter 324 is invalid, void, and preempted by federal law.


Dated:  October 12, 2018                      Respectfully submitted,


**PROSKAUER ROSE LLP**

/s/ *Lawrence R. Sandak*_____
Lawrence R. Sandak
One Newark Center
Newark, NJ 07102
973-274-3200
lsandak@proskauer.com

Michael A. Cardozo*
Jordan B. Leader*
Eleven Times Square
New York, NY 10036-8299
212-969-3000
mcardozo@proskauer.com
jleader@proskauer.com

John E. Roberts*
One International Place
Boston, MA 02110

23

617-526-9600
jroberts@proskauer.com

* Admitted *pro hac vice*

*Attorneys for Plaintiff Waterfront Commission
of New York Harbor*

24